[No. G031852. Fourth Dist., Div. Three. June 30, 2003.]

HETOS INVESTMENTS, LTD., et al., Plaintiffs and Respondents, v. TODD KURTIN, Defendant and Appellant.

**COUNSEL**

Voss, Cook & Thel, Francis T. Donohue III, Daniel S. Miller; Law Offices of Richard E. Flamm and Richard E. Flamm for Defendant and Appellant.

Gray Cary Ware & Freidenrich, Brian L. Behmer, Timothy S. Blackford and Stanley J. Panikowski for Plaintiffs and Respondents.

**OPINION**

**MOORE, J.**—After a real estate transaction went awry, the parties thereto, represented by separate counsel, entered into a settlement agreement. Later, one of the parties agreed to advance settlement monies to another of the parties, but did not want to incur legal fees in connection with the documentation of the loan. Consequently, the borrower asked his law firm to prepare a promissory note documenting the terms to which he and the lender had already agreed. The law firm did so and sent the document directly to the borrower. The borrower and the lender themselves then negotiated an addendum to the promissory note; the borrower did not request assistance from his counsel. Ultimately, the deal gone awry got worse. The borrower sued the other parties to the settlement agreement on various causes of action arising out of it. Included in the complaint was one cause of action for usury, based on the promissory note.

The law firm that prepared the promissory note was also the one that filed the complaint on behalf of the borrower. The lender filed a motion to disqualify that law firm, contending it could not take a position adverse to him, as a former client, and also could not prepare a promissory note and then turn around and sue upon it as being illegal. The trial court denied the motion. The lender appeals, dropping the assertion that he was ever a client of the law firm that prepared the promissory note, and alleging instead the violation of ethical rules and the appearance of impropriety.

His arguments are unavailing. The lender has not demonstrated that the law firm violated State Bar Rules of Professional Conduct, rule 3-210,[1] as he asserts, and American Bar Association Model Rules of Professional Conduct,

---

[1] All subsequent references to "rules," other than "model rules," are to the State Bar Rules of Professional Conduct, unless otherwise indicated.

rule 1.16(a),[2] upon which he also relies, has not been adopted in California. Moreover, to the extent the law firm's actions may or may not give rise to an appearance of impropriety, that does not mean the firm must be disqualified. Appearance of impropriety is not the test for disqualification of counsel in California. Finally, we cannot hold that when a law firm prepares a legal document and later discovers that a provision therein may violate the law, the law firm must be disqualified, as a matter of law, from representing its client in a lawsuit that challenges the validity of the offending provision. We affirm.

I

FACTS

A. *Operating and Settlement Agreements*

On August 15, 1998, Todd Kurtin (Kurtin), Bruce Elieff (Elieff) and Hetos Investments, Ltd., a California limited partnership, entered into an operating agreement pertaining to SunCal of Northern California, LLC, a Delaware limited liability company (SCNC). The purpose of the operating agreement was to acquire and develop a number of Northern California real estate projects. In pursuing those projects, the parties apparently faced certain travails. On March 12, 1999, Hetos Investments, Ltd., David Hetos (Hetos), E. M. Jewett Pacific,[3] CWC, Inc.,[4] Kurtin and Elieff entered into a settlement agreement with respect to the operating agreement. The settlement agreement was made "in order to (i) avoid litigation, (ii) restructure [the parties'] relationship in SCNC, (iii) ensure reimbursement to Hetos Investments[, Ltd.] of [certain expenses], (iv) allocate responsibility for [certain liabilities], and (v) clarify the rights of the parties ... with respect to each of the [p]rojects."

Gray Cary Ware & Freidenrich (Gray Cary) undertook the representation of Hetos and Hetos Investments, Ltd. in 1998.[5] It continued to represent them in connection with the negotiation of the settlement agreement and the performance thereof, including the making of certain elections under the settlement agreement, in 2000. Voss, Cook & Thel (Voss Cook) represented Kurtin, Elieff and CWC, Inc. in connection with the negotiation and drafting

---

[2] All subsequent references to "model rules" are to the American Bar Association Model Rules of Professional Conduct, unless otherwise indicated.

[3] E. M. Jewett Pacific, a California corporation, would appear to hold a partnership interest in Hetos Investments, Ltd., but is not a party to this litigation. Hetos is the president of E. M. Jewett Pacific.

[4] It is unclear how CWC, Inc., a California corporation, became involved in the matter.

[5] The declarations of Hetos and Attorney Lawrence I. Tannenbaum of Gray Cary, submitted in opposition to the motion to disqualify, are not perfectly clear, but appear to indicate that Gray Cary commenced representation of Hetos and Hetos Investments, Ltd. only after the operating agreement was executed.

of both the operating agreement and the settlement agreement. It also represented them with regard to the settlement agreement performance issues. Those two firms continue to represent their respective clients in this litigation. As an aside, Voss Cook admits to having represented Kurtin, Elieff and CWC, Inc. in connection with various unrelated matters.

### B. *Promissory Note*

According to Hetos, as stated in his declaration, by spring 2001, he had received only a fraction of the monies he had been projected to receive under the settlement agreement, and was in a difficult financial situation. As he further declared, Mike McCook, a friend of his in the real estate industry, acted as an intermediary and requested Kurtin to advance monies that were to be paid to Hetos under the settlement agreement. According to Hetos, Kurtin insisted on being repaid $1.50 for every $1.00 advanced and would not agree to anything less.

Kurtin's version of the events is largely the same. His reply memorandum of points and authorities in connection with the disqualification motion explained the scenario thus: "In May 2001 Hetos approached Kurtin to ask for a loan. Kurtin agreed to provide the requested money, but did not want to incur legal fees for preparing a Promissory Note. Hetos told Kurtin that he would have Gray Cary draft the Note at Hetos'[s] *expense* ...."[6]

Hetos, in his declaration, stated that once the parties had agreed to the terms of the promissory note, he contacted Gray Cary and asked the firm to document the agreed-upon terms in a promissory note. In his declaration, he also made clear that negotiations on the promissory note were conducted by Mike McCook and himself, but that Gray Cary was not involved. Hetos declared that the firm provided the promissory note directly to him and that it had no other involvement with the promissory note.

In his declaration, Tannenbaum confirmed that Hetos had requested Gray Cary to prepare a promissory note on the terms to which he and Kurtin had agreed. He further stated that he had provided the promissory note directly to Hetos and that the firm had had no other involvement with the promissory note. In addition, Tannenbaum declared that his firm never had any discussions with Kurtin regarding the promissory note.

---

[6] Kurtin is bound by the description of facts contained in his own memorandum of points and authorities. (*Srithong v. Total Investment Co.* (1994) 23 Cal.App.4th 721, 725, fn. 2 [28 Cal.Rptr.2d 672].)

Ultimately, Hetos executed a promissory note dated May 23, 2001. Pursuant to that promissory note, Kurtin agreed to lend Hetos[7] a maximum amount of $119,000, to be disbursed in monthly sums not to exceed $17,000. The promissory note required Hetos to pay to Kurtin a sum equal to all amounts advanced under the promissory note plus "$0.50 for each dollar advanced." The promissory note also contained language, which was crossed out by hand, stating that the holder thereof could demand payment "once the total aggregate distributions to, or on behalf of, Payor (including, without limitation, any distributions made to Walter Hick) pursuant to that certain Settlement Agreement and Release dated March 12, 1999 equal or exceed $2,000,000." The promissory note provided no information concerning the identity of Walter Hick (Hick) and no indication of when the described distributions under the settlement agreement would likely equal or exceed $2,000,000.

Hetos also executed a May 23, 2001 addendum to the promissory note.[8] The addendum contained language appearing to supersede the above-quoted promissory note provision concerning the time of repayment. Instead of that provision, the addendum stated: "Holder may make demand for payment of all amounts due under this Note, at his discretion, once the aggregate distributions owed by Payor to Walt Hick has been made." Once again, the addendum gave no clue as to the identity of Hick and did not specify the anticipated date for repayment. In addition to the language about the timing of repayment, the addendum permitted the holder of the promissory note to collect amounts payable thereunder directly from monies owing to Hetos under the settlement agreement.

Hetos declared that Kurtin had prepared the addendum. In fact, Kurtin had prepared two draft addenda to the promissory note. One of them was agreed upon as the final and signed. Hetos further declared that he himself had faxed the executed promissory note and addendum back to Kurtin directly, together with a personal letter. Tannenbaum confirmed that Gray Cary had not had any involvement at all with the addendum. Kurtin's counsel acknowledged at oral argument on the motion to disqualify that Kurtin had testified to having prepared the addendum.

---

[7] The promissory note included a typewritten signature block prepared for Hetos alone, and Hetos signed above the signature line. The names of Hetos Investments, Ltd. and E. M. Jewett Pacific were added by hand and Hetos appears to have signed on behalf of both of those entities. Nonetheless, Hetos alone is identified as the borrower in the body of the promissory note.

[8] The addendum contains a confused signature block, which references not only Hetos, but also Hetos Investments, Ltd. and E. M. Jewett Pacific. Hetos appears to have applied his signature with reference to both entities.

## C. *Complaint*

Hetos and Hetos Investments, Ltd. filed suit against Kurtin, Elieff and CWC, Inc. The complaint contained 13 causes of action arising out of the operating agreement and the settlement agreement and one cause of action pertaining to the promissory note. The causes of action relating to the operating agreement and the settlement agreement included fraud, conversion, breach of contract, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, and others. The cause of action on the promissory note was for usury. Gray Cary filed the complaint on behalf of Hetos and Hetos Investments, Ltd.

## D. *Motion to Disqualify*

Voss Cook, on behalf of Kurtin, filed a motion to disqualify Gray Cary. The motion was based on the fact that Gray Cary had prepared the promissory note and turned around and filed a complaint containing a cause of action challenging the terms of the promissory note as being usurious. The lead argument was that Gray Cary had represented Kurtin in the preparation of the promissory note, and that, in filing the complaint, it was acting adversely to its former client, Kurtin, in contravention of rule 3–310(C). Kurtin also argued that Gray Cary should be disqualified because of an appearance of impropriety, inasmuch as the firm purportedly prepared a promissory note it knew to be "illegal," caused him to enter into an "illegal" transaction, and then filed suit claiming the promissory note to be "illegal." In support of this argument, he cited rules 3–110 and 3–210. Finally, Kurtin asserted that Gray Cary should be disqualified because he would likely file a cross-complaint against the firm on account of its preparation of the purportedly "illegal" promissory note.

The declaration of Kurtin was filed in support of the motion to disqualify. In the declaration, Kurtin stated, inter alia, that Gray Cary was the only firm that had been involved in the negotiation or drafting of the promissory note and that his understanding was that Gray Cary had represented both Hetos and himself in the transaction. He also said that no one at Gray Cary had disclosed to him that the promissory note violated California law or that he should seek independent counsel. Yet nowhere in the declaration did Kurtin state that he had ever had any type of communication whatsoever with anyone at Gray Cary concerning the matter.

At oral argument on the motion to disqualify, Kurtin's counsel said that Gray Cary had represented Hetos in connection with the preparation of the promissory note. He also acknowledged that Kurtin did not have a retainer agreement with Gray Cary and that there was no evidence to show that

Kurtin had ever had any contact with Gray Cary concerning the promissory note. The attorney further stated, however, that Kurtin nonetheless believed that Gray Cary had represented him in connection with the promissory note. In addition, Kurtin's counsel explained his viewpoint that the existence of an attorney-client relationship between Gray Cary and Kurtin was not a predicate to disqualification, because there were other bases for disqualifying the firm. Among them was the simple appearance of impropriety—Gray Cary had prepared a promissory note and then filed suit thereon, claiming it was usurious. In addition, Gray Cary had purportedly violated certain ethical rules.

The court found that there was no attorney-client relationship between Gray Cary and Kurtin. It denied the motion for disqualification.

## E. *Appeal*

Kurtin appeals. He does not now challenge the finding that there was no attorney-client relationship between himself and Gray Cary. However, he continues to contend there remain other grounds for disqualification.

## II

## DISCUSSION

### A. *Standard of Review*

The parties disagree as to the applicable standard of review in this matter. Hetos contends the case must be reviewed for an abuse of discretion on the part of the trial court. Kurtin argues that we should apply a de novo standard of review. Both parties cite *People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135 [86 Cal.Rptr.2d 816, 980 P.2d 371].

As stated in that case, "Generally, a trial court's decision on a disqualification motion is reviewed for abuse of discretion. [Citations.] If the trial court resolved disputed factual issues, the reviewing court should not substitute its judgment for the trial court's express or implied findings supported by substantial evidence. [Citations.] When substantial evidence supports the trial court's factual findings, the appellate court reviews the conclusions based on those findings for abuse of discretion. [Citation.] However, the trial court's discretion is limited by the applicable legal principles. [Citation.] Thus, where there are no material disputed factual issues, the appellate court reviews the trial court's determination as a question of law. [Citation.] In any event, a disqualification motion involves concerns that justify careful review of the

trial court's exercise of discretion. [Citation.]" (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc., supra,* 20 Cal.4th at pp. 1143–1144; accord, *Adams v. Aerojet-General Corp.* (2001) 86 Cal.App.4th 1324, 1330–1331 [104 Cal.Rptr.2d 116].)

On appeal, Kurtin makes clear that he does not challenge the trial court's finding that there was no attorney-client relationship between himself and Gray Cary. He asks this court to review one issue, as a matter of law. That issue is whether Gray Cary must necessarily be disqualified for having prepared the promissory note and thereafter having filed a complaint which challenges the validity of the promissory note as violating the usury laws. As to this limited point, there are no material disputed factual issues. Gray Cary prepared the promissory note containing the interest provision. It also filed, on behalf of Hetos and Hetos Investments, Ltd., the complaint challenging that interest provision. Whether this set of facts compels disqualification is a question we will review as a matter of law. (See *Frazier v. Superior Court* (2002) 97 Cal.App.4th 23, 28 [118 Cal.Rptr.2d 129].) We apply a de novo standard of review.

B. *Analysis*

Kurtin argues that Gray Cary should be disqualified as a matter of law because it allegedly violated rule 3–210 and model rule 1.16(a) "by drafting a promissory note that it now contends is illegal." He also insists Gray Cary should be disqualified because its actions have created an appearance of impropriety. Finally, Kurtin contends the trial court order should be over-turned because the court failed to make specific findings of fact and to demonstrate that it had considered appropriate factors in making its ruling. We shall address these issues in turn.

(1) *State Bar Rules of Professional Conduct, rule 3–210*

Rule 3–210 provides in pertinent part: "A member shall not advise the violation of any law ... unless the member believes in good faith that such law ... is invalid." According to Kurtin, because Gray Cary admits to having documented the loan it now claims violates the usury laws and does not assert a belief that those laws are invalid, it violated rule 3–210 as a matter of law. We disagree.

If there was a violation of the usury laws, a matter we do not decide, the violation was on the part of the individual seeking to collect interest at a usurious rate—Kurtin. Yet Kurtin concedes, for the purposes of the appeal, that Gray Cary did not represent him in connection with the documentation of the loan. Since Gray Cary did not render legal advice to Kurtin in connection

with the loan, it did not advise him to violate the usury laws. The only person to whom Gray Cary rendered advice in connection with the promissory note would appear to be Hetos. ■ However, Kurtin cites no legal authority for the proposition that Gray Cary violated rule 3–210 by failing, if it did so fail, to advise its own client against paying an excessive interest rate, assuming the rate is indeed excessive. Moreover, Kurtin cites no legal authority for the proposition that it is illegal for an individual to agree to pay an interest rate that exceeds what the law permits the payee to demand. In sum, Kurtin has not shown how Gray Cary violated rule 3–210 in the rendering of legal advice.

Kurtin disagrees with our interpretation of rule 3–210, to the extent we focus on the advice rendered to Gray Cary's client, Hetos. Kurtin insists that the rule is not limited in application solely to advice rendered to clients. He emphasizes that the word "client" is not found in the rule. ■ While that is correct, the rule does contain the word "advise." In essence, the rule proscribes the rendering of certain advice. It presupposes that there is a recipient of the lawyer's advice. Kurtin has not explained how he can qualify as a party to whom Gray Cary rendered advice, so as to trigger the application of the rule. (See *Fox v. Pollack* (1986) 181 Cal.App.3d 954, 959 [226 Cal.Rptr. 532] [attorney did not render legal advice to nonclients who signed documents he prepared].)

(2) *American Bar Association Model Rules of Professional Conduct, rule 1.16(a)*

Kurtin says that even if Gray Cary did not render "advice" to him, so as to make rule 3–210 applicable, model rule 1.16(a) must certainly apply. That model rule provides in pertinent part: "[A] lawyer shall not represent a client … if: [¶] … the representation will result in violation of the rules of professional conduct or other law …." As Kurtin sees it, if Gray Cary is correct in its assertion that the promissory note violates applicable usury laws, then Gray Cary's legal representation caused a violation of law. Thus, argues Kurtin, disqualification is warranted because Gray Cary's actions violated model rule 1.16(a). We cannot agree. The issue of whether or not the promissory note is usurious has not yet been determined. Only after that determination is made will it be known if the preparation of the promissory note resulted in the violation of law.

■ In addition, we underscore the fact that "the ABA Model Rules of Professional Conduct … do not establish ethical standards in California, as they have not been adopted in California and have no legal force of their own. [Citations.]" (*State Comp. Ins. Fund v. WPS, Inc.* (1999) 70 Cal.App.4th 644, 655–656 [82 Cal.Rptr.2d 799].) Even were this not the case, the

violation of a model rule would not compel disqualification as a matter of law. Inasmuch as a violation of a rule of the State Bar Rules of Professional Conduct does not necessarily compel disqualification (*Gregori v. Bank of America* (1989) 207 Cal.App.3d 291, 303 [254 Cal.Rptr. 853]), a fortiori a violation of a model rule would not do so.

### (3) *Appearance of Impropriety*

Gray Cary, at the request of Hetos, documented loan terms dictated by Kurtin. Kurtin now claims it creates an appearance of impropriety for Gray Cary to advocate on behalf of its own client that the terms Kurtin demanded are usurious. Worse, Kurtin insists Gray Cary engaged in "predatory lawyering," stating that "the only motive Gray Cary could have had for drafting and transmitting a contract it knew contained 'illegal' terms was to induce Kurtin to violate the law by loaning money in reliance on the promissory note."

In urging disqualification, Kurtin cites *Gregori v. Bank of America, supra,* 207 Cal.App.3d 291, which states that: "Canon 9 of the American Bar Association Model Code of Professional Responsibility (hereinafter Canon 9) provides that: 'A lawyer should avoid even the appearance of professional impropriety.' " (*Id.* at p. 305, fn. omitted.) ██ Of course, "California has not adopted Canon 9, either in the Rules of Professional Conduct of the State Bar of California or in the Business and Professions Code .... Nevertheless, the ABA Code still 'serves to guide California courts' [citations], which have adverted to Canon 9 or the appearance of impropriety standard in a variety of contexts. [Citations.]" (*Ibid.*; see also *Neal v. Health Net, Inc.* (2002) 100 Cal.App.4th 831, 846 [123 Cal.Rptr.2d 202].)

For Gray Cary to prepare a promissory note and later file suit on behalf of its client challenging the validity of that promissory note may indeed create an appearance of impropriety. That does not, however, answer the question Kurtin poses: Does that compel disqualification as a matter of law? No.

██ As we recently stated in *DCH Health Services Corp. v. Waite* (2002) 95 Cal.App.4th 829, 833 [115 Cal.Rptr.2d 847], "an appearance of impropriety by itself does not support a lawyer's disqualification. [Citation.]" (See also *Klein v. Superior Court* (1988) 198 Cal.App.3d 894, 909 [244 Cal.Rptr. 226].) "Despite the many references to the appearances standard in our case law, and despite occasional judicial statements that '[d]isqualification is proper ... to avoid any appearance of impropriety' [citation], there is no California case in which an attorney has been disqualified *solely* on this basis. Invariably, Canon 9 has been relied upon to disqualify counsel only where the appearance of impropriety arises in connection with a tangible dereliction." (*Gregori v. Bank of America, supra,* 207 Cal.App.3d at p. 306, fn. omitted.) However, the record before us contains no evidence of any tangible dereliction on Gray Cary's part.

■ As explained in *Gregori v. Bank of America, supra,* 207 Cal.App.3d at pages 308–309: "The case law and the legal literature persuade us that it is relatively unimportant whether the status or misconduct claimed to warrant disqualification is proscribed by a particular ethical norm or disciplinary rule or may be characterized as a failure to avoid the appearance of impropriety. Since the purpose of a disqualification order must be prophylactic, not punitive, the significant question is whether there exists a genuine likelihood that the status or misconduct of the attorney in question will affect the outcome of the proceedings before the court." (Accord, *Koo v. Rubio's Restaurants, Inc.* (2003) 109 Cal.App.4th 719, 734 [135 Cal.Rptr.2d 415]; *Cal Pak Delivery, Inc. v. United Parcel Service, Inc.* (1997) 52 Cal.App.4th 1, 11 [60 Cal.Rptr.2d 207]; but see *In re Complex Asbestos Litigation v. Owens-Corning Fiberglas Corporation* (1991) 232 Cal.App.3d 572, 591–592 [283 Cal.Rptr. 732].)

In the case before us, the trial court, in ruling on the 14th cause of action in the complaint, will need to decide whether the interest provision contained in the promissory note violates the usury laws. This determination is unlikely to be dependent upon facts related to Gray Cary's involvement in the matter.[9] While it may be awkward for Gray Cary, having prepared the promissory note, to turn around and argue in a court of law that one of its provisions violates the usury laws, it is not apparent how it could affect the outcome of the proceedings whether the usury argument is made by Gray Cary or by replacement counsel following Gray Cary's disqualification. Inasmuch as the identity of the drafter of the promissory note would appear to be irrelevant to the determination of whether the provision in question is usurious, we cannot see how the identity of the lawyer making the argument could somehow taint the outcome.

In an effort to prove that Gray Cary's involvement *will* affect the outcome, Kurtin latches onto certain language about fraud, contained in Hetos's pleadings. In the introduction to the complaint, Hetos described a general scheme by which Kurtin, Elieff and CWC, Inc. purportedly set out to defraud him in connection with the real estate developments. Among other things, he said: "To add insult to injury, and as further evidence of Defendants' fraudulent scheme, after Defendants obtained Plaintiff's interest in the valu-able real estate projects and deprived Plaintiff of funds, one of the Defendants then 'loaned' Plaintiff David Hetos money (which should have already been

---

[9] Whether or not the promissory note is usurious may turn on factual information not apparent from the face of the promissory note or the addendum. While the promissory note requires repayment of principal, plus 50 percent, it is not necessarily the case that it is usurious. The addendum, drafted by Kurtin, requires repayment only after certain sums have been paid to Hick. We cannot tell from this repayment "schedule" when payment is likely to be due. Whether or not the promissory note is usurious could depend on whether Hick will be fully paid in one year or twenty years.

paid) at an exorbitant and Constitutionally prohibited 50% interest rate." Hetos made similar statements, about the promissory note as further evidence of fraud, in his memorandum of points and authorities in support of opposition to the disqualification motion and in his reply brief on appeal.

Kurtin does not explain how it would negatively impact the outcome of the case, with respect to himself, if Gray Cary were to continue to press the argument that the promissory note it prepared is evidence of Kurtin's purportedly fraudulent scheme. As Kurtin states, his best rebuttal to Hetos's claim that the promissory note itself is evidence of fraud "is to show the jury that the [promissory note] was drafted by Hetos'[s] own counsel." That would indeed appear to be an argument favoring Kurtin. Thus, for Gray Cary to be in the uncomfortable position of arguing that the promissory note it prepared is evidence of Kurtin's fraud would not appear to be a reason why the outcome of the proceedings would be affected in any manner adverse to Kurtin. Moreover, we question how much less awkward it would be for new counsel to argue, on Hetos's behalf, that the promissory note Hetos's former counsel prepared is evidence of Kurtin's fraud. In any event, if there is prejudice arising out of Gray Cary's continued involvement in the case, it would only be as to Gray Cary's client and cannot concern Kurtin.

This is not a case where the outcome of the proceedings may be affected because the law firm the moving party seeks to disqualify has obtained confidential information that may be used to advantage against that party. (See *Gregori v. Bank of America, supra,* 207 Cal.App.3d at p. 309.) All we have here is an awkward situation, where a law firm's actions may indeed create an appearance of impropriety. That notwithstanding, "[d]isqualification is inappropriate ... simply to punish a dereliction that will likely have no substantial continuing effect on future judicial proceedings. [Citation.]" (*Ibid.*; accord, *Koo v. Rubio's Restaurants, Inc., supra,* 109 Cal.App.4th at p. 734; *Cal Pak Delivery, Inc. v. United Parcel Service, Inc., supra,* 52 Cal.App.4th at p. 11.) What Kurtin really wants is for this court to apply the "smell test." We have already rejected that test in *Smith, Smith & Kring v. Superior Court* (1997) 60 Cal.App.4th 573, 580 [70 Cal.Rptr.2d 507], wherein we stated that " 'the smell test' is not consonant with the current state of the law."

### (4) *Trial Court Findings and Considerations*

In addition to the points Kurtin raises concerning Gray Cary's actions, he claims the trial court erred in failing to consider those of his arguments that were not based on an attorney-client relationship. He also maintains the trial court erroneously omitted to make specific findings of fact and to demonstrate that it had considered appropriate factors in making its ruling. He cites this court's opinion in *Smith, Smith & Kring v. Superior Court, supra,* 60 Cal.App.4th 573, in support of his position.

In *Smith, Smith & Kring v. Superior Court, supra,* 60 Cal.App.4th 573, 70 Cal. Rptr.2d 507, law firm No. 1 represented an individual in a personal injury action and law firm No. 2 represented the defendants. Subsequently, the individual filed a malpractice action against law firm No. 1 in connection with its legal services rendered in the personal injury action. Law firm No. 1 hired law firm No. 2 to represent it in the malpractice action. The individual brought a successful motion to recuse law firm No. 2 in the malpractice action. This court issued a writ of mandate directing the trial court to vacate its order recusing counsel.

The basis of the recusal motion was that law firm No. 2 might be called to testify at trial. Law firm No. 1 was aware of this possibility and, in spite of it, consented to have law firm No. 2 continue providing legal representation. Nonetheless, the trial court, it seemed, disqualified law firm No. 2 simply because members of the firm might be called to testify. This was error.

As this court stated, "Although a court has discretion to recuse an attorney who may testify, in exercising that discretion, the court must weigh the competing interests of the parties against potential adverse effects on the integrity of the proceeding before it …. [Citations.]" (*Smith, Smith & Kring v. Superior Court, supra,* 60 Cal.App.4th at p. 580.) In holding the trial court had failed to fulfill this obligation, we further stated: "In light of the importance the law places on clients' ability to retain an attorney of their choice and waive any potential conflict, we hold that trial judges must indicate on the record they have considered the appropriate factors and make specific findings of fact when weighing the conflicting interests involved in recusal motions. [Citation.] There is no indication from the record the trial court recognized the importance of [law firm No. 1's] waiver or considered the factors outlined above." (*Id.* at p. 582.) This is the language upon which Kurtin relies to assert the matter should be reversed because of trial court error.

However, *Smith, Smith & Kring v. Superior Court, supra,* 60 Cal.App.4th 573, is distinguishable from the case before us and the quoted language does not compel disqualification of Gray Cary. Where in *Smith* it seemed apparent that the trial court had disregarded the factors it was required to evaluate in making its determination, that is not the case here. The reporter's transcript shows that, contrary to Kurtin's assertion, the trial court did consider all of his arguments, including those concerning the appearance of impropriety and the violation of ethical rules as the basis for disqualification.

At oral argument in the trial court, Kurtin's attorney pointed out that the motion to disqualify was based on more than one ground, not just the assertion that Gray Cary had taken a position adverse to Kurtin as a former client. He specifically mentioned the purported violation of model rule

1.16(a) and the appearance of impropriety. The court observed that Kurtin was arguing that what Gray Cary had done was illegal, irrespective of whether there was an attorney-client relationship with Kurtin.

With respect to the attorney's argument about the appearance of impropriety, the court asked for clarification as to whether it was Gray Cary or Gray Cary's client that was doing the suing. After the point was clarified, the court asked, "Is that it?" This gave Kurtin's counsel a chance to expand his arguments concerning the appearance of impropriety. After counsel made some additional comments, the court asked, "Anything further?" This demonstrated that the court was giving consideration to counsel's arguments concerning the bases for disqualification other than those based on the purported attorney-client relationship and was providing counsel with yet another opportunity to continue his argument. The colloquy on the record serves to distinguish this case from *Smith, Smith & Kring v. Superior Court, supra,* 60 Cal.App.4th 573, where there was no indication from the record that the court had considered appropriate factors.

Irrespective of the court's *consideration* of the matter, Kurtin complains that the minute order on the motion to disqualify contained no *findings* at all. Furthermore, when making its ruling and findings at oral argument, the court stated simply, "Motion to disqualify is denied. No facts to support the fact that there was any relationship between the law firm and Mr. Kurtin." Kurtin criticizes the lack of specific factual findings other than the one pertaining to the attorney-client relationship. Yet at the same time, he contends that the issue of disqualification on the basis of the violation of ethical rules and the appearance of impropriety should be decided as a matter of law, because there are no material disputed facts with respect to those arguments. That being the case, Kurtin has not explained why specific factual findings should be required in this particular context. The task before the trial court in *Smith, Smith & Kring v. Superior Court, supra,* 60 Cal.App.4th 573, was to "weigh the competing interests of the parties against potential adverse effects on the integrity of the proceeding before it," not to decide an issue of law. (*Id.* at p. 580.)

### (5) *Conclusion*

Kurtin ascribes a malevolence to Gray Cary's behavior. He argues the firm knew at the time it prepared the promissory note that it was "illegal," and prepared it with the intent to trap him into violating the law and to "aid and abet" him in the commission of a misdemeanor. There is no evidence to support this allegation. More importantly, it has not yet been determined whether the promissory note actually violates the usury laws, and Kurtin himself maintains it does not. Even assuming the promissory note is usurious,

Kurtin discounts the possibility that Gray Cary could have suffered an error in judgment or made a mistake by overlooking a legal issue. We will not disregard that possibility. We will no more assume that Gray Cary deliberately set up Kurtin to participate in an "illegal" transaction than we will assume that Kurtin, perhaps seeing litigation looming on the horizon, sought to set up Gray Cary for disqualification. (See *DCH Health Services Corp. v. Waite, supra,* 95 Cal.App.4th at p. 834 [we presume "that, unless proven otherwise, lawyers will behave in an ethical manner"].)

■ Finally, to hold that a law firm that prepared a document containing a clause arguably violating California law must be barred, as a matter of law, from representing the client for whom it prepared the document would be to enunciate an overbroad rule with potentially undesirable consequences. It would mean that any time a firm negotiated a transaction and later discovered a mistake in one of the documents it had prepared, it would be unable to clean up the matter on its client's behalf. The firm would be precluded from making its best arguments as to how the documents should be interpreted and applied in light of the mistake. This should not be the case. A firm should not be prohibited, as a matter of law, from trying to protect its client's interests once those mistakes are known.

In so stating, we emphasize that we respond to the issues as framed by the parties. Kurtin poses the question: Is a law firm barred, as a matter of law, from representing its client in a lawsuit asserting that a promissory note the firm prepared is usurious? We have answered that limited question. We do not mean to imply either that the promissory note in this case is indeed usurious or that Gray Cary committed any mistake or misdeed in preparing it. We simply hold that Gray Cary's preparation of the promissory note and its continued representation of Hetos in connection with litigation over the legality of that document, without more, do not compel the firm's disqualification as a matter of law.

### III

### DISPOSITION

The order is affirmed. Respondents shall recover their costs on appeal. This court's previously issued stay order is dissolved.

Rylaarsdam, Acting P. J., and Fybel, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 17, 2003. Kennard, J., did not participate therein.