[No. B194714. Second Dist., Div. Five. July 25, 2007.]

In re JASMINE S. et al., Persons Coming Under the Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY
SERVICES, Plaintiff and Respondent, v.
ANNA P. et al., Defendants;
CHILDREN'S LAW CENTER OF LOS ANGELES, Objector and
Appellant.

## COUNSEL

Akin Gump Strauss Hauer & Feld, Rex S. Heinke and Seth M. M. Stodder for Objector and Appellant.

Raymond G. Fortner, Jr., County Counsel, and Tracey Dodds, Principal Deputy County Counsel, for Plaintiff and Respondent.

Merrill Lee Toole, under appointment by the Court of Appeal, for Minor Jasmine S.

Christopher Blake, under appointment by the Court of Appeal, for Minor Lou D.

OPINION

MOSK, J.—

## INTRODUCTION

This is one of a number of appeals by the Children's Law Center of Los Angeles (the Center or CLC), all from orders of the juvenile court disqualifying the Center from representing children in dependency proceedings because of purported conflicts of interest (conflicts).[1] We consider whether the juvenile court erred in disqualifying one of the Center's units in a case involving the concurrent representation of two clients, siblings Jasmine S. and Lou D. (the children), with potentially adverse interests. The children were each represented by a different unit of the Center. The Center had created these units to enable it to provide, in the same proceeding, legal representation to multiple clients who might have conflicts. The juvenile court, questioning the integrity of the ethical walls between the Center's units, based its disqualification on what it determined was an "appearance" of a conflict. We reverse the disqualification order.

We hold that, consistent with California Rules of Court, rule 5.660(c)[2] and the California Supreme Court's decision in *In re Celine R.* (2003) 31 Cal.4th 45 [1 Cal.Rptr.3d 432, 71 P.3d 787], an attorney representing multiple siblings in dependency proceedings may be disqualified only if the siblings have an actual, present conflict of interest. A mere potential conflict does not warrant disqualification. The juvenile court found no actual conflict in this case.

## BACKGROUND

The Center is a publicly funded, nonprofit law office that represents parties in the Los Angeles County Juvenile Dependency Court when legal services are required under Welfare and Institutions Code section 317. The Center formerly was called Dependency Court Legal Services (DCLS). Pursuant to two agreements, first with the Los Angeles County Board of Supervisors and now with the Administrative Office of the Courts, the Center has been

---

[1] The California Supreme Court has granted review of our decision in the first such appeal, *In re Charlisse C.* (2007) 149 Cal.App.4th 1554 [58 Cal.Rptr.3d 173], review granted July 18, 2007, S152822 (referred to hereafter as the *Charlisse* case). Because the juvenile court's disqualification order in this case was based on its disqualification order in the *Charlisse* case, we have granted the Center's request to take judicial notice of the record in that case.

[2] All rule references are to the California Rules of Court unless stated otherwise. Former rule 1438, in effect at the time of the disqualification order in this case, was renumbered rule 5.660, effective January 1, 2007.

structured into three separate units, designated CLC Units 1, 2, and 3, to permit the Center to provide legal representation to multiple children in the same dependency proceeding, even if the children have conflicting interests.[3]

The proceedings in this case commenced on July 18, 2006, when Jasmine was 14 years old and her half brother Lou was 11. The Los Angeles County Department of Children and Family Services (DCFS) filed a petition pursuant to Welfare and Institutions Code section 300 with respect to both children, alleging that the children's mother (mother) had neglected the children, that mother and Lou's father both had histories of drug abuse and violent domestic altercations, and that Lou's father had a history of drug-related criminal convictions. Jasmine was detained by DCFS. Lou could not be located and was "detained at large."

At the detention hearing on July 18, the juvenile court appointed CLC Unit 1 Attorney Jody Leibman to represent Jasmine. The juvenile court ordered the children detained and issued a protective custody warrant for Lou. Jasmine was placed with her maternal aunt. Mother voluntarily surrendered Lou into DCFS custody on August 14. Lou did not wish to be placed with his aunt, with whom Jasmine was placed, alleging that his aunt "hits on" him. He was placed in foster care. Mother admitted she had an unresolved substance abuse problem and had recently used cocaine. Both children stated that they did not want to live with mother. DCFS filed an amended petition on August 21, which, among other things, added an allegation that mother had inappropriately disciplined the children by striking them with a closed fist and belt.

At the pretrial resolution conference (PRC) on August 21, the juvenile court appointed CLC Unit 2 Attorney Jennifer Lorson to represent Lou. During the hearing, Lorson stated that Lou did not want to live with his maternal aunt because "she has used corporal discipline on him." The record does not reflect why the juvenile court appointed separate counsel for Lou. No one raised a conflict issue at the August 21 hearing.

The PRC was continued to September 18, at which hearing Lou reversed his prior position and requested to be placed, along with Jasmine, in their maternal aunt's home. The juvenile court deferred Lou's request pending further investigation. No one raised a conflict issue at the September 18 hearing.

The PRC was continued again to September 22, the same day as the disqualification hearing in the *Charlisse* case. None of the parties in this case

---

[3] Prior to 2005, the Center represented both parents and children in dependency proceedings. (See *Castro v. Los Angeles County Bd. of Supervisors* (1991) 232 Cal.App.3d 1432, 1436 [284 Cal.Rptr. 154].) The Center now provides legal services only to children.

attended the September 22 hearing—only the attorneys were present. The juvenile court approved the placement of both Jasmine and Lou with their maternal aunt. Lorson, Lou's CLC Unit 2 attorney, then informed the juvenile court that she had discovered evidence that she believed indicated that Miriam Krinsky, the Center's executive director, improperly received copies of confidential e-mails sent by Lorson to her supervisors over the CLC Unit 2 supervisors e-mail group. The juvenile court continued the PRC to September 29, and ordered all three of the Center's units to show cause why the Center should not be recused from the case.

Evidence submitted by the Center indicated that the e-mail group Lorson had referred to was a nonconfidential e-mail group for CLC Unit 2 supervisors. Each of the Center's three units also had a separate "case-confidential" e-mail group. Krinsky was not a recipient of any of the case-confidential e-mail groups. At the September 29 hearing, the head of CLC Unit 2, Lorson's supervisor, contended that there was no conflict and that the Center should not be disqualified. The juvenile court rejected that contention, stating, "[T]he cases have, especially [*City and County of San Francisco v. Cobra Solutions, Inc.* (2006) 38 Cal.4th 839 [43 Cal.Rptr.3d 771, 135 P.3d 20]], indicated the importance of appearances to the public[;] since this is a public funded attorney group, it's important to maintain the appearance of no conflict, and instead what we have is the appearance of conflict, inadvertent or otherwise. I don't know. I don't really care. I'm not going to make any findings one way or the other but, clearly, it gives the appearance of a conflict."

The juvenile court continued the matter to October 4 "in order to resolve these apparent conflict issues to see whether or not we can come to some agreement on a way in which [the Center] can represent multiple parties . . . ." At the October 4 hearing, the heads of CLC Units 1 and 2 both objected to being recused, arguing that there was no actual conflict. The juvenile court nevertheless disqualified CLC Unit 1, and appointed a new attorney for Jasmine. The juvenile court stayed the disqualification issue until October 11 "only as to Lou," so that CLC Unit 2 could obtain a conflict waiver.

At the conclusion of the October 4 hearing, Lorson sought additional guidance from the juvenile court because she was concerned that she might "get dinged by the Bar for not following ethical rules." The juvenile court clarified its ruling: "There's a systemic conflict. There's no actual conflict between the children. . . . [¶] And on occasion it sounds to me as if there's been inappropriate interaction between the three firms, either from the administration, or filtering on down the supervisors, or whatever, so that— nobody can ever prove there's an actual conflict but it certainly gives the appearance of a conflict. [¶] But I have not received any facts that on any

specific case there was a breach—there was conflict or breach of the privilege or confidentiality. Certainly, it's—[¶]—the appearance and the ability to cross the ethical wall." The Center timely appealed the juvenile court's order disqualifying CLC Unit 1.[4]

## DISCUSSION

### A. *Standard of Review*

"Generally, a trial court's decision on a disqualification motion is reviewed for abuse of discretion. [Citations.] If the trial court resolved disputed factual issues, the reviewing court should not substitute its judgment for the trial court's express or implied findings supported by substantial evidence. [Citations.] When substantial evidence supports the trial court's factual findings, the appellate court reviews the conclusions based on those findings for abuse of discretion. [Citation.] However, the trial court's discretion is limited by the applicable legal principles. [Citation.] Thus, where there are no material disputed factual issues, the appellate court reviews the trial court's determination as a question of law. [Citation.] In any event, a disqualification motion involves concerns that justify careful review of the trial court's exercise of discretion. [Citation.]" (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1143–1144 [86 Cal.Rptr.2d 816, 980 P.2d 371]; see also *City and County of San Francisco v. Cobra Solutions, Inc.* (2006) 38 Cal.4th 839, 848 [43 Cal.Rptr.3d 771, 135 P.3d 20].)

### B. *The Center Has Standing to Seek Appellate Review of the Disqualification Order*

The children contend that the Center lacks standing to appeal the disqualification order. The standing issue arises because neither the children nor the Center's Unit 1, the attorneys of record disqualified by the juvenile court, sought appellate review of the disqualification order. The children argue that the Center is an umbrella entity that is neither an "aggrieved" party nor the attorneys that were actually disqualified.

■ A party has standing to seek review of a judgment or order by demonstrating that the party is legally aggrieved within the meaning of Code of Civil Procedure section 902. (*Crook v. Contreras* (2002) 95 Cal.App.4th

---

[4] Lou moved to augment the record on appeal with the transcript of a juvenile court hearing that occurred in November 2006, after the juvenile court's order disqualifying CLC Unit 1 and after the Center filed its notice of appeal. Because the hearing occurred subsequent to the order on appeal, and is irrelevant to our resolution of the issues raised by the disqualification of CLC Unit 1, we deny Lou's motion to augment the record. (*In re Zeth S.* (2003) 31 Cal.4th 396, 405 [2 Cal.Rptr.3d 683, 73 P.3d 541].)

1194, 1201 [116 Cal.Rptr.2d 319]; *Bratcher v. Buckner* (2001) 90 Cal.App.4th 1177, 1184 [109 Cal.Rptr.2d 534].) "One is considered, 'aggrieved' whose rights or interests are injuriously affected by the judgment. [Citations.] Appellant's interest ' "must be immediate, pecuniary, and substantial and not nominal or a remote consequence of the judgment." ' [Citation.]" *(County of Alameda v. Carleson* (1971) 5 Cal.3d 730, 737 [97 Cal.Rptr. 385, 488 P.2d 953]; accord, *United Investors Life Ins. Co. v. Waddell & Reed, Inc.* (2005) 125 Cal.App.4th 1300, 1304–1305 [23 Cal.Rptr.3d 387].) " '[A] party must be "beneficially interested" (Code Civ. Proc., § 1086), i.e., have "some special interest to be served or some particular right to be preserved or protected over and above the interest held in common with the public at large." [Citation.] This standard . . . is equivalent to the federal "injury in fact" test, which requires a party to prove by a preponderance of the evidence that it has suffered "an invasion of a legally protected interest that is '(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.' " [Citation.]' *(Associated Builders & Contractors, Inc. v. San Francisco Airports Com.* (1999) 21 Cal.4th 352, 361–362 [87 Cal.Rptr.2d 654, 981 P.2d 499].)" *(Syngenta Crop Protection, Inc. v. Helliker* (2006) 138 Cal.App.4th 1135, 1182 [42 Cal.Rptr.3d 191]; see *Carsten v. Psychology Examining Com.* (1980) 27 Cal.3d 793, 796 [166 Cal.Rptr. 844, 614 P.2d 276] [to show beneficial interest party must show "some special interest to be served or some particular right to be preserved or protected over and above the interest held in common with the public at large"].) "The purpose of a standing requirement is to ensure that the courts will decide only actual controversies between parties with a sufficient interest in the subject matter of the dispute to press their case with vigor. [Citations.]" *(Common Cause v. Board of Supervisors* (1989) 49 Cal.3d 432, 439 [261 Cal.Rptr. 574, 777 P.2d 610]; see *Holmes v. California Nat. Guard* (2001) 90 Cal.App.4th 297, 314–315 [109 Cal.Rptr.2d 154].)

Since 1990, the Center and its predecessor organization, DCLS, have provided legal representation to children and other litigants in dependency litigation in Los Angeles County. The Center is contractually obligated to the Administrative Office of the Courts to provide conflict-free representation to children in dependency litigation. The Center has an immediate and concrete stake in the present litigation. The Center's interest is not nominal or remote. Further, because of the ongoing contractual obligations owed to the Administrative Office of the Courts, the Center has a sufficient interest to pursue its position. The Center meets the tests for standing to appeal. *(Associated Builders & Contractors, Inc. v. San Francisco Airports Com., supra,* 21 Cal.4th at pp. 361–362; *Carsten v. Psychology Examining Com., supra,* 27 Cal.3d at p. 796; *County of Alameda v. Carleson, supra,* 5 Cal.3d at p. 737.)

## C. *The Juvenile Court Abused Its Discretion in Disqualifying the Center's Unit 1*

For two independent reasons, the juvenile court abused its discretion when it disqualified CLC Unit 1 from representing Jasmine: (1) it applied the wrong legal standard; and (2) applying the proper legal standard, there is no substantial evidence of an actual, disqualifying conflict between Jasmine and Lou, even if CLC Unit 1 and CLC Unit 2 are treated as a single firm for conflict purposes.

### 1. *The juvenile court erred by applying an appearance-of-conflict standard*

██ The juvenile court disqualified CLC Unit 1 based on the "appearance" of a conflict. California courts, however, do not disqualify lawyers on conflict grounds—particularly lawyers from legal-services agencies—when the lawyer has no personal or imputed conflict. (See *Goldberg v. Warner/Chappell Music, Inc.* (2005) 125 Cal.App.4th 752, 764–765 [23 Cal.Rptr.3d 116] [no vicarious disqualification when attorney who worked on matter no longer associated with firm and had not actually shared confidential information]; *Hetos Investments, Ltd. v. Kurtin* (2003) 110 Cal.App.4th 36, 47 [1 Cal.Rptr.3d 472] [disqualification appropriate " 'only where the appearance of impropriety arises in connection with a *tangible dereliction*' " (italics added)], quoting *Gregori v. Bank of America* (1989) 207 Cal.App.3d 291, 306 [254 Cal.Rptr. 853].) Contrary to the juvenile court's suggestion, "an appearance of impropriety by itself does not support a lawyer's disqualification." (*DCH Health Services Corp. v. Waite* (2002) 95 Cal.App.4th 829, 833 [115 Cal.Rptr.2d 847].) Even *Castro v. Los Angeles County Bd. of Supervisors, supra*, 232 Cal.App.3d 1432 (*Castro*)—upon which the juvenile court and respondents rely—rejected the "appearance of impropriety" standard ("plaintiffs concede that California has not adopted that standard"). (*Id.* at p. 1443.) By applying the wrong legal standard to disqualify CLC Unit 1, the juvenile court abused its discretion. (*Doe 2 v. Superior Court* (2005) 132 Cal.App.4th 1504, 1517 [34 Cal.Rptr.3d 458] [" 'A trial court abuses its discretion when it applies the wrong legal standards applicable to the issue at hand.' [Citation.]"].)

### 2. *The juvenile court should not have disqualified CLC Unit 1 because there was no actual conflict between Jasmine and Lou*

Contrary to the juvenile court's assertions, no California authority has recognized the concept of a theoretical "systemic" (the term used by the juvenile court here) or "structural" conflict as the sole basis for attorney disqualification in a particular case. A conflict arises when the circumstances

of a *particular case* present "a substantial risk that the lawyer's *representation of the client* would be materially and adversely affected by the lawyer's own interests or by the lawyer's duties to another current client, a former client, or a third person." (Rest.3d Law Governing Lawyers, § 121, italics added.) If competent evidence does not establish such a conflict, the attorney is not disqualified for a conflict.

■ California law is settled that, in dependency proceedings, an attorney representing multiple siblings must be disqualified only if the circumstances present an *actual* conflict—a mere potential conflict is insufficient to warrant disqualification. (Rule 5.660(c)(2)(E) ["If the court determines that an *actual conflict of interest exists*, the court must relieve an attorney from representation of some or all of the siblings" (italics added)];[5] *In re Celine R., supra,* 31 Cal.4th at p. 58 ["After the initial appointment [of a single lawyer to represent multiple siblings in dependency proceedings], the court will have to

---

[5] Rule 5.660(c)(2) provides:

"(2) *Withdrawal from appointment or continued representation*

"(A) An attorney representing a group of siblings has an ongoing duty to evaluate the interests of each sibling and assess whether there is an actual conflict of interest.

"(B) The following circumstances, standing alone, do not necessarily demonstrate an actual conflict of interest:

"(i) The siblings are of different ages;

"(ii) The siblings have different parents;

"(iii) There is a purely theoretical or abstract conflict of interest among the siblings;

"(iv) Some of the siblings are more likely to be adopted than others;

"(v) The siblings have different permanent plans;

"(vi) The siblings express conflicting desires or objectives, but the issues involved are not material to the case; or

"(vii) The siblings give different or contradictory accounts of the events, but the issues involved are not material to the case.

"(C) It is not necessary for an attorney to withdraw from representing some or all of the siblings if there is merely a reasonable likelihood that an actual conflict of interest will develop.

"(D) If an attorney believes that an actual conflict of interest existed at appointment or developed during representation, the attorney must take any action necessary to ensure that the siblings' interests are not prejudiced, including:

"(i) Notifying the juvenile court of the existence of an actual conflict of interest among some or all of the siblings; and

"(ii) Requesting to withdraw from representation of some or all of the siblings.

"(E) If the court determines that an actual conflict of interest exists, the court must relieve an attorney from representation of some or all of the siblings.

"(F) After an actual conflict of interest arises, the attorney may continue to represent one or more siblings whose interests do not conflict only if:

"(i) The attorney has successfully withdrawn from the representation of all siblings whose interests conflict with those of the sibling or siblings the attorney continues to represent;

"(ii) The attorney has exchanged no confidential information with any sibling whose interest conflicts with those of the sibling or siblings the attorney continues to represent; and

"(iii) Continued representation of one or more siblings would not otherwise prejudice the other sibling or siblings."

relieve counsel from multiple representation *if, but only if, an actual conflict arises*" (italics added)]; *In re Barbara R.* (2006) 137 Cal.App.4th 941, 953–954 [40 Cal.Rptr.3d 687] [no conflict when single attorney represented half siblings; "[a] conflict arises where minor's counsel seeks a course of action for one child with adverse consequences to the other"].)[6]

Neither *Castro, supra,* 232 Cal.App.3d 1432, nor *People v. Christian* (1996) 41 Cal.App.4th 986 [48 Cal.Rptr.2d 867]—both of which predate rule 5.660(c) and the Supreme Court's decision in *In re Celine R., supra,* 31 Cal.4th 45—alters this fundamental rule. In both of those cases, the courts assumed, for purposes of their analyses, that an actual conflict existed between the relevant clients. (*Castro, supra,* 232 Cal.App.3d at pp. 1440–1442; *Christian, supra,* 41 Cal.App.4th at pp. 991–992, 1001.) Neither of those cases held or implied that the absence or breach of one or more of the ethical safeguards present would *create* a conflict when no conflict would otherwise exist. To the contrary, the court in *Castro* stated, "It is not to be assumed hypothetically, in the absence of facts, that DCLS attorneys will act to violate their client's confidence or to compromise their legal interests," and that "[s]peculative contentions of conflict of interest cannot justify disqualification of counsel." (*Castro, supra,* 232 Cal.App.3d at p. 1442.)

In this case, the record contains no evidence of an actual, disqualifying conflict. The record does not indicate why the juvenile court appointed separate counsel for Jasmine and Lou in the first place. We cannot infer from a silent record that the Center determined that an *actual conflict* existed between the children at the inception of the case, or that the Center ever represented to the juvenile court that an actual conflict existed. The existence of such an inference is undermined by the different legal standards that govern whether an attorney can accept the initial appointment to represent multiple siblings in a dependency proceeding, on the one hand, and whether an attorney must be disqualified from an existing representation, on the other hand. Rule 5.660(c)(1)(B)(ii) requires an attorney to decline to represent multiple siblings if, inter alia, "[c]ircumstances specific to the case present a *reasonable likelihood* that an actual conflict of interest will arise among those siblings" (italics added). In contrast, rule 5.660(c)(2)(C) specifically provides, "It is not necessary for an attorney to withdraw from representing some or all of the siblings if there is merely a reasonable likelihood that an actual conflict of interest will develop." Rather, an attorney must withdraw or be disqualified only if an actual conflict exists. (Rule 5.660(c)(2)(A), (E); *In re Celine R., supra,* 31 Cal.4th at p. 58.)

---

[6] "An actual conflict exists when an attorney's professional judgment for one client necessarily will be affected adversely because of the interests of another client." (2 Mallen & Smith, Legal Malpractice (2007 ed.) § 16:2, pp. 818–819.)

■ The heads of CLC Units 1 and 2 both objected to being disqualified on the ground that no actual conflict existed between Jasmine and Lou. Further, in clarifying its ruling for Lorson, the juvenile court expressly stated, "There's no actual conflict between the children." No facts or circumstances giving rise to a present, actual conflict of interest between Jasmine and Lou appear in the record. The juvenile court therefore erred by disqualifying CLC Unit 1 from representing Jasmine.

## DISPOSITION

The juvenile court's order of disqualification is reversed.

Armstrong, J., concurred.

**TURNER, P. J.,** Concurring.—I concur in the judgment. The evidence in this matter was that in the case of *In re Charlisse C.* (2007) 149 Cal.App.4th 1554 [58 Cal.Rptr. 3d 173], review granted July 18, 2007, S152822. There was evidence that the Children's Law Center of Los Angeles (the center), which was originally organized as three separate law firms, had failed to maintain the ethical walls in existence when its structure was approved by Division Three of this appellate district in *Castro v. Los Angeles County Bd. of Supervisors* (1991) 232 Cal.App.3d 1432, 1435–1445 [284 Cal.Rptr. 154]. In response to the extensive evidentiary showing of noncompliance with *Castro*, the juvenile court gave a tentative ruling that covers seven pages in the reporter's transcript and discusses both violations of substance and appearance. *Charlisse C.* is a successive representation case where the center had previously represented the mother. (See *Flatt v. Superior Court* (1994) 9 Cal.4th 275, 282–284 [36 Cal.Rptr.2d 537, 885 P.2d 950]; *People v. Baylis* (2006) 139 Cal.App.4th 1054, 1064–1065 [43 Cal.Rptr.3d 559].)

This case is materially different from *Charlisse C.* Here, the purported multiple representation involves two *siblings* by a law firm that neglected to maintain the ethical walls mandated by *Castro v. Los Angeles County Bd. of Supervisors, supra,* 232 Cal.App.3d at pages 1435–1445. The disqualification rules applicable here are substantively different from those that apply to multiple representation of a parent and a sibling as was the case in *Charlisse C.* In the case of siblings, multiple representation is permissible in the absence of actually conflicting interests. (*In re Celine R.* (2003) 31 Cal.4th 45, 58 [1 Cal.Rptr.3d 432, 71 P.3d 787]; *Carroll v. Superior Court* (2002) 101 Cal.App.4th 1423, 1428–1430 [124 Cal.Rptr.2d 891]; Welf. & Inst. Code, § 317, subd. (c).) Regardless of the evidence of noncompliance with the ethical walls mandated by *Castro v. Los Angeles County Bd. of Supervisors,*

*supra*, 232 Cal.App.3d at pages 1435–1445, no improper concurrent representation issue is present here because there is no evidence of actually conflicting interests between the two youngsters. On this concise ground, I would reverse the disqualification order.