[Crim. No. 10288. Third Dist. May 19, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
STEPHEN HARRY JOHNSON, Defendant and Appellant.

COUNSEL

Duane C. Miller, Kenneth R. O'Brien and Miller & O'Brien for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Eddie T. Keller and W. Scott Thorpe, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**DeCRISTOFORO, J.*—**Defendant appeals from a judgment of conviction (order of probation) entered after he pled guilty to violation of

*Assigned by the Chairperson of the Judicial Council.

section 11358, subdivision (a), of the Health and Safety Code, cultivation of marijuana.

On May 9, 1979, Parole Agent Richard Gee contacted Jerry Clayton, a parolee under his supervision, after having been unable to locate him for approximately three months. Clayton told him he was living with the defendant. The next day, after talking with detectives of the Yuba County Sheriff's office, Agent Gee took Clayton into custody and requested the detectives' assistance in conducting a search of Clayton's residence, pursuant to an advance consent given by Clayton as a condition of his parole. In view of Clayton's history of involvement with drugs, Gee was concerned that he might be for that reason in violation of his parole. On the way to the defendant's residence, Clayton told Gee that he did not live with the defendant, but had stayed there only occasionally.

The party entered the driveway of defendant's residence. The property surrounding the house was large and rustic, with scattered gardens. Two detectives and Gee proceeded to the house, leaving a third detective and Clayton with the automobiles. They met defendant's wife at the door, and asked her whether Clayton resided there. She referred them to the defendant, indicating that they should enter. Gee identified himself to the defendant and asked if Clayton resided there. Defendant said that he did. Gee explained that they wished to search those portions of the house that Clayton had occupied or to which he had access. Defendant led them to Clayton's bedroom, which they began to search. Defendant then demanded that they stop, as he believed the search to be illegal, and admitted that he had a small quantity of marijuana in the house. At that point, Officer Finch, the detective who had remained in the driveway with Clayton, entered and informed another detective that he had observed a number of marijuana plants growing 30 to 40 feet from the driveway. The second detective confirmed the plants could be seen from the driveway, examined them more closely, then returned to the house to inform everyone of the discovery of the plants and of his intention to secure a telephonic search warrant for the house and surrounding property. The warrant was issued, and 147 plants, several bags of seeds, some dried leaves, two balance scales, smoking paraphernalia, a small quantity of marijuana, and several "unknown substances" were found.

## I

Defendant contends that the evidence discovered at his residence should have been suppressed as the fruit of an illegal search. Although

he pled guilty, the issue is properly before us on appeal, since a motion to suppress the evidence was made at the preliminary hearing and renewed in the superior court. (Pen. Code, § 1538.5, subd. (m).)

Defendant apparently asks us to hold that it was illegal to search any part of his house, over his objection, based on Clayton's "consent . . . made at an unknown time and place far removed" from the time of the search. Defendant's reliance on *People* v. *Alders* (1978) 87 Cal.App.3d 313 [151 Cal.Rptr. 77], is based on a misreading of the opinion. The Court of Appeal there held that police exceeded the permissible scope of a concededly valid probation search when they searched "a distinctly female coat" with "no reason to suppose that [it] was jointly shared by" the male probationer and his female cotenant. (*Id.,* at p. 317.) ■ The officers clearly had a right in this case to search portions of the house which had been occupied by Clayton and areas to which he normally had access. (Cf. *Russi* v. *Superior Court* (1973) 33 Cal.App.3d 160 [108 Cal.Rptr. 716]; *People* v. *Icenogle* (1977) 71 Cal.App.3d 576 [139 Cal.Rptr. 637].) Defendant does not contend on appeal that the permissible scope of the parole search was exceeded, and the record does not show that it extended into any portions of the house in the exclusive control of the defendant or his wife. In any case, defendant has not shown any connection between the *extent* of any search that might have gone on inside the house and any observations made outside the house from the driveway by Finch, who had a right to be there because *a* search was justified. (Cf. *Guidi* v. *Superior Court* (1973) 10 Cal.3d 1, 7, 10 [109 Cal.Rptr. 684, 513 P.2d 908].)

The superior court determined that Finch saw and identified the marijuana plants from the driveway. ■ On review, we must view the evidence in the light most favorable to the trial court's order denying the motion to suppress, and must affirm its determination if there is substantial evidence to support it. (*Lorenzana* v. *Superior Court* (1973) 9 Cal.3d 626, 636 [108 Cal.Rptr. 585, 511 P.2d 33].) ■ The testimony of Officer Tindel that he could see the marijuana plants from the driveway, confirming Finch's observation,[1] and the fact that the plants were in a metal container in a clearing approximately 40 feet from the driveway, constituted substantial evidence supporting the trial court's determination. When police have a plain view of contraband from a portion of the premises as to which the occupant has exhibited no reasonable expectation of privacy, there is no search in the constitutional

---

[1]The superior court had the preliminary hearing transcript before it by stipulation of the parties.

sense. (*Dean* v. *Superior Court* (1973) 35 Cal.App.3d 112, 117 [110 Cal.Rptr. 585]; cf. *Dillon* v. *Superior Court* (1972) 7 Cal.3d 305, 310-311 [102 Cal.Rptr. 161, 497 P.2d 505]; *People* v. *Bradley* (1969) 1 Cal.3d 80, 84-85 [81 Cal.Rptr. 457, 460 P.2d 129]; *People* v. *King* (1970) 5 Cal.App.3d 724, 726-727 [85 Cal.Rptr. 461].)[2]

The validity of the search warrant under which the other evidence was discovered, based on this plain view observation, is not otherwise questioned on appeal. The motion to suppress was properly denied.

## II

■ Defendant contends that the superior court had a duty to recuse the district attorney, who had been defendant's attorney of record at an early stage of a previous, subsequently dismissed action based on the same facts.

In 1978, there were two public defender's offices in Yuba County, one consisting of Attorneys Thomas Mathews and Thomas Hagler. Mathews' office was appointed to represent the defendant on May 22, 1978. On June 9, 1978, defendant filed a motion on Mathews' office stationary to disqualify a certain judge. Hagler appeared in court with defendant on June 16, the date set for the preliminary hearing, but the hearing was continued to June 30. He also submitted a motion to suppress evidence on behalf of defendant on June 20. On June 30, Mathews filed a stipulation on behalf of defendant to the effect that the preliminary hearing could be held before a particular magistrate. The hearing was called on that date, defendant being represented by Hagler, and the magistrate dismissed the complaint without prejudice, for reasons which are not set out in the record. Mathews was elected district attorney in June.

---

[2]We note defendant's trial counsel made the superficially more plausible argument that, though Finch's initial observation of the marijuana plants may have been proper, his subsequent act of leaving the driveway to examine the plants more closely amounted to an illegal "confirmatory search" which tainted the process by which the evidence was obtained, justifying its suppression. (*People* v. *Cook* (1978) 22 Cal.2d 67 [148 Cal.Rptr. 605, 583 P.2d 130].) But the "search" occurred on May 10, 1978, over five months before *Cook* became final, and the rule in that case operates only prospectively. (*Id.*, at p. 99.) In any case, because the defendant had no reasonable expectation of privacy regarding the plants, the "confirmatory search" invaded no Fourth Amendment interest, and thus was unlike the situation contemplated in *Cook*.

In July 1978, a new complaint was filed and different counsel was appointed for the defendant.

The prosecutor through most of the proceedings was Deputy District Attorney Frederick Schroeder, but Mathews appeared at a brief session at which the court made its ruling on defendant's suppression motion; he was not called upon to speak, however. He also appeared at the hearing at which defendant offered a conditional guilty plea, but said almost nothing, although the record does reflect that he conversed with defendant's counsel regarding the plea bargain. Mathews also appeared at the hearing at which the court accepted defendant's conditional plea and imposed sentence, where he supported rather strongly the recommendation of the probation report that defendant spend six months in jail as a condition of receiving probation.[3]

Defendant sought and was denied a certificate of probable cause to preserve this issue for appeal. (Pen. Code, § 1237.5.) However, because the substance of his objection to the participation of District Attorney Mathews may arguably be characterized as "based solely upon grounds . . . occurring after entry of [a guilty] plea which do not challenge the validity of the plea" (Cal. Rules of Court, rule 31(d)), we assume that the issue is properly before us.

■ "A member of the State Bar shall not accept employment adverse to a client or former client, without the informed and written consent of the client or former client, relating to a matter in reference to which he has obtained confidential information by reason of or in the course of his employment by such client or former client." (Rule 4-101, Rules Prof. Conduct, Bus. & Prof. Code, foll. § 6076.) This rule implements the duty of an attorney "[t]o maintain inviolate the confidence, and at every peril to himself to preserve the secrets, of his client." (Bus. & Prof. Code, § 6068, subd. (e).) (*In re Charles L.* (1976) 63 Cal. App.3d 760, 763 [132 Cal.Rptr. 840].) For an actual conflict to arise,

---

[3]"[H]e grew the marijuana, he committed the crime, it's a felony. The fact that they're two inches has no bearing because it's there [*sic*] idea to commit the crime when he planted the marijuana. Obviously, he's not new to the system because he's been before the Court before and got a deal from the previous regime. I think he should at least do the time in the jail that the probation Department recommended and submit it on that.

"[H]e had that one day in custody, and I feel that some more time should be spent, not for rehabilitation, but to punish him so he'll think twice about ever drifting into this area again."

there must be a threatened disclosure of confidential information. (*Ibid.*)

"Undeniably...it would not be proper for [a district attorney] to prosecute a client or former client, without that client's consent, for a crime 'relating to a matter in reference to which [he] has obtained confidential information by reason of or in the course of his employment by such client or former client.' [Citations.] [¶] ...[I]t seems clear a trial court could disqualify the attorney in question." (*People* v. *Superior Court* (*Greer*) (1977) 19 Cal.3d 255, 261 [137 Cal.Rptr. 476, 561 P.2d 1164].) ▉ There is no evidence in this case that District Attorney Mathews became privy to any confidential information imparted by the defendant in the course of his office's brief representation of the defendant. Nevertheless, we are persuaded that the superior court could in its discretion have recused him. "It is essential that the public have absolute confidence in the integrity and impartiality of our system of criminal justice. This requires that public officials not only in fact properly discharge their responsibilities, but also that such officials avoid, as much as is possible, the *appearance* of impropriety." (*People* v. *Rhodes* (1974) 12 Cal.3d 180, 185 [115 Cal.Rptr. 235, 524 P.2d 363].) (Italics in original.)[4] (Cf. *Younger* v. *Superior Court* (1978) 77 Cal.App.3d 892 [144 Cal.Rptr. 34].)

In this case, the superior court was apparently unaware of the previous relationship of the defendant and District Attorney Mathews, which is understandable in that he did not appear in behalf of the defendant in the instant action, or even in the prior one.[5] We may only speculate as to whether or not Mathews was aware that the defendant was a former client, in view of the fact that his associate appears to have had full responsibility for the case. It seems very likely, on the other hand, that the defendant was aware of District Attorney Mathews' former attorney-client relationship with him, yet he did not raise the issue in the court below. In *People* v. *Superior Court* (*Greer*), *supra*, 19 Cal.3d, at page 261, the court recognized that a former client may con-

---

[4]Similarly, we do not consider it of great significance that the action in which Mathews was appointed as defendant's counsel was subsequently dismissed, and a new complaint filed based on the same facts. It may help to explain, however, the superior court's apparent ignorance of the prior representation by Mathews.

[5]Defendant's appellate counsel represented, in relation to a late motion to augment the record, which we granted, that the clerk of the justice court and defendant's trial counsel both appear to have been unaware that Mathews' office at one time represented the defendant. Appellate counsel themselves became aware of the fact over four months after being retained by the defendant to prosecute his pending appeal.

sent to an attorney's adverse representation. We must therefore consider whether the defendant in effect consented to Mathews' adverse representation.

■ It is an "established exception" to the general rule against subsequent representation of another against a former client that the former client may "expressly or impliedly" consent to the adverse representation. (*Ward v. Superior Court* (1977) 70 Cal.App.3d 23, 31 [138 Cal.Rptr. 532]; *Kraus v. Davis* (1970) 6 Cal.App.3d 484, 491 [85 Cal.Rptr. 846].) ■ We are aware that courts are ordinarily reluctant to presume consent from mere delay in raising an objection (*id.*, at p. 492; *Earl Scheib, Inc. v. Superior Court* (1967) 253 Cal.App.2d 703, 707-709 [61 Cal.Rptr. 386]), but in this case, the defendant was in the best position to appreciate any impropriety in the proceeding. He never raised an objection before the superior court, which could have inquired into critical issues as to which we can only speculate: e.g., whether District Attorney Mathews did, in fact, acquire any confidential information regarding the case because of his office's brief representation of the defendant, and whether there was reason to believe that the entire office of the district attorney must be recused to preserve the appearance of propriety. By first raising the issue on appeal, defendant has denied the superior court any opportunity to exercise its valued discretion in this regard. (Cf. *People v. Battin* (1978) 77 Cal.App.3d 635, 670-672 [143 Cal.Rptr. 731, 95 A.L.R.3d 248].) Instead, defendant entered a conditional plea of guilty, based upon a bargain negotiated with District Attorney Mathews. That bargain resulted in the dismissal of charges against his wife and probation for him. Moreover, after Mathews urged the court to follow the recommendations of the probation report, the court indicated its intention to do so, and gave the defendant a final chance to discuss the bargain with his attorney, whereupon defendant, through his attorney, reaffirmed his plea. We hold that, in the circumstances of this case, the defendant impliedly consented to the adverse representation by District Attorney Mathews.

The judgment (order of probation) is affirmed.

Puglia, P. J., and Evans, J., concurred.

A petition for a rehearing was denied June 12, 1980, and appellant's petition for a hearing by the Supreme Court was denied July 16, 1980. Bird, C. J., was of the opinion that the petition should be granted.