[No. A106217. First Dist., Div. Five. May 24, 2006.]

THE PEOPLE, Plaintiff and Respondent, v.
PATRICK BAYLIS, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II and III.

## Counsel

Gordon S. Brownell, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Catherine A. Rivlin and Allan Yannow, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**GEMELLO, J.**—Defendant Patrick Baylis appeals from a judgment entered following his conviction of four counts of rape and four other charges. He contends that the trial court erred in denying his motion to substitute retained counsel Richard Hove for his appointed counsel. The trial court denied the motion because attorney Hove had an actual conflict of interest in that Hove had previously represented defendant's brother, Rodney Baylis, in prosecutions for two other sexual assaults. Rodney Baylis had also previously been charged with the very offenses involved in defendant's case. Defendant's anticipated trial strategy was to implicate his brother in the offenses. In the published portion of the decision, we hold that in these unusual circumstances the trial court did not abuse its discretion or violate defendant's right to counsel by denying the motion to substitute attorneys. In the unpublished portion of the decision, we reject defendant's instructional claims and his claims under *Blakely v. Washington* (2004) 542 U.S. 296 [159 L.Ed.2d 403, 124 S.Ct. 2531].

### PROCEDURAL BACKGROUND

In October 2003, the District Attorney for the County of Alameda filed a second amended information alleging that defendant Patrick Baylis committed four counts of rape (Pen. Code, § 261, subd. (a)(2); counts 1–4),[1] one count of penetration with a foreign object (§ 289; count 5), one count of forcible oral copulation (§ 288a, subd. (c); count 6), one count of kidnapping with the intent to commit rape or oral copulation (§ 208, former subd. (d); count 7), and one count of robbery (§ 211; count 8). As to counts one through six, it was alleged that defendant kidnapped the victim and that the movement of the victim substantially increased the risk to her (§ 667.61, subds. (d)(2) & (e)(1)) and that defendant personally used a firearm (§§ 667.61, subd. (e)(4), 12022.3). As to counts seven and eight, it was alleged that defendant personally used a firearm. (§ 12022.5.) Defendant was represented at trial by an attorney other than Hove. A jury found defendant guilty on all counts and found that all the alleged enhancements were true. In April 2004, the trial court imposed a total prison term of 44 years to life.

### FACTUAL BACKGROUND

*The Prosecution Case*

On the morning of February 23, 1997, as the victim was walking to work, a man she described as Black and heavyset walked toward her. He grabbed her arm, put his hand over her mouth, and put a gun to her cheek. He told her not to scream or he would kill her, and he told her to keep walking.

They walked through a parking lot and he covered her face with her jacket. The assailant forced her into a car and drove her to an apartment in Hayward. He led her to a walk-in closet, covered her eyes with a T-shirt, and told her to take off her clothes. He forced her to have intercourse in the closet and on a mattress in another room, and, holding a gun to her head, made her orally copulate him. As the assailant handed the victim her clothes, she heard him go through her pockets. She later discovered that approximately $17 was missing. The assailant told the victim that he should just kill her, led her back to the mattress, and forced her to have intercourse again.

They left the apartment. The assailant drove for a while and told the victim to get out of the car. She contacted the police, describing her assailant as a Black male in his early 30's, five feet five inches tall, about 200 pounds, with a full beard and closely cut hair.

In a photo lineup, the victim picked out defendant's brother, Rodney Baylis, as her assailant. She was not confident of the identification, although

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

she did not say so that day to the detective in charge of the investigation, Frank Daley. She did tell Audrey Pinkney, who accompanied her to the police station, that the photo she picked out resembled her assailant but that she did not really think it was him.

One night about a month later, the victim saw the car her assailant had driven parked across the street from her house. She saw three men approach the car and told Pinkney, with whom she was living, that one of the men was her assailant. They called the police, who arrived soon afterwards and drove the victim and Pinkney to where the car had been stopped by other officers. The victim identified defendant as her assailant. One of the officers said she was confusing defendant with his brother, but the victim never changed her mind.

Because Detective Daley had identified Rodney as the primary suspect in the rape, defendant was not taken into custody. Another officer who was present during the identification admitted that he falsely wrote in his report that the victim did not make an identification. He testified that Daley asked him to write a supplemental report falsely stating that the victim reported that the person the police had detained looked like the assailant but that the assailant was actually shorter (defendant is over six feet tall and Rodney is approximately five and a half feet tall). A couple of days later the victim told Daley that defendant was her assailant; he corrected her, admonishing that her assailant was actually the defendant's brother, whom she had identified in the photo lineup.

Rodney was charged with the rape, along with separate sexual assaults in Alameda and Oakland. At the preliminary hearing in August 1997, the victim identified Rodney as the person who had raped her. However, she had concerns about the accuracy of her identification. After the hearing, she told Pinkney that the man she identified was not her assailant. When she made the identification during the hearing, she trusted Daley's judgment more than her own.

In June 1999, DNA analysis of a semen sample on the victim's underpants excluded Rodney. Defendant and the victim's boyfriend, Robert Pinkney, could not be excluded as sources of the semen. Assuming Robert Pinkney was one source of the semen, the odds of a person taken at random being another contributor were approximately one in 690 billion Caucasian males and one in 10 billion African-American males. Not assuming that Robert Pinkney was a source of the semen, the odds of a person taken at random being one of the contributors was one in 8,200 Caucasian males and one in 890 African-American males.

Based on information obtained from a car dealership, the police determined that the car the assailant drove matched the description of a 1996 Hyundai registered to a Cathrell Golston. The investigation also led the police to an apartment on Vermont Street in Hayward, which the victim subsequently identified as the location where she was raped. The victim's and defendant's fingerprints were found in the Vermont Street apartment; Rodney's were not. Golston lived in the Vermont Street apartment but moved out before February 23, 1997. Golston previously was in a romantic relationship with defendant. The romantic relationship ended in December 1996, but she continued to allow defendant to drive her car and defendant had keys to the Vermont Street apartment. Rodney had never been to the apartment.

*The Defense Case*

Defendant challenged the victim's identification. The parties stipulated that a victim-witness assistance counselor would testify that the victim never told her that Rodney was not her assailant and did not express any doubt about the identification of Rodney. Similarly, defendant's sister testified that she saw the victim at Rodney's preliminary hearing, and the victim saw defendant and did not say anything about him.

Defendant testified. He denied raping, kidnapping, or having any contact with the victim. He did admit that he had a key to Golston's apartment on Vermont Street and that he drove her car with her permission. The night before the victim was kidnapped and raped, the defendant picked up Rodney from a BART (Bay Area Rapid Transit) station and gave him Golston's car, as well as the keys to the apartment on Vermont Street. Later that night, defendant and two friends, Mike and Tanya, went to a bowling alley in Hayward. Afterwards, they went to the Vermont Street apartment, and defendant had sex with Tanya. Defendant left the apartment early the next morning.

In February 1997, defendant's hair was about three or four inches long, not closely cut. He had a goatee but not a full beard. He went to the police department voluntarily after he heard the police were looking for Rodney. He was interviewed by two detectives but was not arrested.

DISCUSSION

I. *Denial of Defendant's Motion to Substitute Attorneys*

Defendant contends that denial of his motion to substitute retained counsel Hove for his appointed counsel violated his right to counsel under the federal and state Constitutions. In particular, defendant contends that because the trial

court found that he freely and voluntarily waived Hove's conflict of interest arising from Hove's former representation of Rodney, he was entitled under the federal and state Constitutions to substitute Hove for his appointed counsel. He also contends that the trial court erred both in concluding that Rodney was required to waive the conflict and that Rodney's waiver was inadequate. We hold that the trial court properly concluded that Rodney did not adequately waive the conflict raised by representation of defendant by Hove and that denial of the substitution motion was not an abuse of discretion or a violation of defendant's right to counsel.

### A. *Procedural Background*

In 2003, well before trial, defendant requested that Richard Hove be substituted as counsel of record in place of appointed counsel, Michael Berger. The prosecutor opposed the request on the ground that Hove had previously represented Rodney in prosecutions for sexual assaults that occurred in Alameda in August 1996 and in Oakland in April 1997. The rape at issue in this case occurred in Hayward in February 1997. Originally Rodney was charged with the Hayward offenses as well, and the victim identified Rodney as her assailant at the preliminary hearing, but the charges were dismissed after DNA analysis implicated defendant.

Hove never represented Rodney in relation to the Hayward offenses. Rodney's attorney at the preliminary hearing on the charges arising out of the Alameda, Oakland, and Hayward incidents was Roger Patton. Hove represented Rodney at trial for the Alameda and Oakland incidents. Hove raised a mistaken identity defense and pointed to Patrick as the assailant who committed the Oakland sexual assault. Rodney testified that the last time he had seen the gun used in the Oakland assault Patrick had it. Hove attempted to question Rodney about the misidentification in *this* case, but the trial court did not allow the questioning. Hove called Patrick as a witness, and he admitted ownership of the gun used in the Oakland assault but refused to answer whether he took the gun to the store where the rape took place; the trial court struck Patrick's testimony about the gun. In closing, Hove argued that Patrick was responsible for the Oakland assault. Rodney was convicted of both the Alameda and Oakland offenses.[2]

---

[2] The description of Rodney's trial is derived from the trial court's order, which in turn is derived from the prosecutor's opposition to defendant's substitution motion. Defendant did not object below to the prosecutor's description of Rodney's trial. Neither has defendant raised any objection on appeal.

The trial court found that an actual conflict of interest would exist were Hove to represent defendant. The trial court explained: "Rodney Baylis, defendant's brother, was originally identified as the perpetrator of the crimes for which defendant now stands accused. The sexual assault in Oakland, for which Rodney Baylis was convicted, occurred within a few months of the instant incident. Therefore, notwithstanding the alleged DNA evidence, mistaken identification remains a potentially viable defense in this case. Defendant admits that he may introduce evidence that his brother, Rodney Baylis, committed the offenses in this case . . . Mr. Hove will be placed in the untenable position of presenting evidence inculpating his former client, Rodney Baylis, directly contradicting the position taken at Rodney Baylis' trial, in which Mr. Hove attempted to prove that Patrick Baylis committed this rape. (The Court notes that double jeopardy has not attached to Rodney Baylis in this case.) [¶] Other potential conflicts of interest exist. The District Attorney asserts that he may call Mr. Hove as a witness in this case because, during Mr. Hove's representation of Rodney Baylis, Mr. Hove had discussions with the defendant Patrick Baylis regarding the events involving the instant charges. Those discussions are not privileged attorney client communications because the defendant was not Mr. Hove's client at the time. Furthermore, the District Attorney points out the possibility that Mr. Hove's privileged communications with Rodney Baylis may be subject to disclosure at trial, given that Rodney Baylis, as Hove's former client, must also waive the conflict."[3]

Defendant submitted two declarations purporting to waive the conflict of interest. The court appointed independent counsel to advise defendant regarding the conflict. Independent counsel was charged with explaining to defendant the "existence, implications, and ramifications of having Mr. Hove represent him in this matter and to explain the consequences of defendant's purported waiver of conflict-free counsel." The trial court held two hearings on the issue and questioned defendant extensively regarding his understanding of Hove's conflict of interest at each hearing. Ultimately, the trial court found that defendant knowingly and intelligently waived the conflict of interest.[4]

However, the trial court denied the substitution request because it found that Rodney had not adequately waived the conflict. The court concluded that the Rules of Professional Conduct required Hove to obtain Rodney's consent

---

[3] Defendant contends that the trial court was mistaken in asserting that Hove could have been required to disclose his confidential communications with Rodney. We do not address this issue because we do not rely on any such possibility in affirming the trial court's denial of the substitution motion.

[4] Respondent contends that the trial court erred in concluding that defendant's waiver was knowing and voluntary. We do not address this issue because we conclude that the lack of adequate waiver from Rodney is sufficient to support denial of the substitution motion.

before undertaking the representation of defendant. The court emphasized its "independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." The sum of Rodney's declaration read, "I understand that Patrick Baylis is now seeking to have Mr. Hove represent him. Since I was represented by Mr. Hove and was charged with these offenses, I have been advised that a conflict of interest may exist with Mr. Hove representing Patrick Baylis. I am aware of this and herby [sic] waive any conflict of interest regarding same." After explaining the inadequacy of Rodney's waiver and reviewing case authority, the trial court concluded: "Mr. Hove's former client, Rodney Baylis, has not submitted an intelligent and knowing waiver of the conflict of interest nor has he waived the confidentiality of his attorney-client communications. When representing Rodney, Mr. Hove attempted to place responsibility for the instant charges upon defendant. Now, he seeks to implicate his former client for these crimes. To that end, Mr. Hove will have the benefit of what he learned when he represented Rodney at trial. Mr. Hove may be called to testify in this case and could possibly be forced to disclose privileged communications. Under these facts, the Court finds Rodney Baylis' written waiver to be wholly insufficient and further finds that Mr. Hove's representation of Patrick Baylis, if allowed, poses a significant threat to the integrity of the judicial process."

B. *The Existence of a Conflict Implicating Counsel's Duties to Rodney*

■ Defendant contends that the trial court erred in concluding that there was a conflict requiring a waiver from Rodney. We disagree. Professional ethics demand that an attorney avoid conflicts of interest in which duties owed to different clients are in opposition. (*Flatt v. Superior Court* (1994) 9 Cal.4th 275, 282, & fn. 2 [36 Cal.Rptr.2d 537, 885 P.2d 950] (*Flatt*); Rules Prof. Conduct, rule 3-310.)[5] A conflict of interest may arise from an attorney's concurrent or successive representation of clients with adverse interests. (*Flatt,* at pp. 283–284.) These two situations implicate distinct ethical concerns and public policies. (*Ibid.*)

■ The trial court focused on rule 3-310(C), which relates to concurrent representation and requires informed written consent from clients where an attorney seeks to represent in a single matter multiple clients with potential or

---

[5] All further references to rules are to the Rules of Professional Conduct of the State Bar of California.

actual conflicts or where an attorney seeks to represent clients with adverse interests in separate matters. (Rule 3-310(C).)[6] Concurrent representation of clients with adverse interests compromises an attorney's duty of loyalty. (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1146 [86 Cal.Rptr.2d 816, 980 P.2d 371] (*SpeeDee Oil*).) Defendant contends that his substitution request did not implicate rule 3-310(C) because Hove did not seek to represent defendant and Rodney concurrently either in a single matter or in separate matters. Respondent counters only that the "record does not affirmatively show that Hove was not representing Rodney in some capacity" at the time the trial court considered the substitution request. On this record, we cannot determine whether the substitution request would have created a concurrent representation conflict implicating rule 3-310(C).

Whether or not granting the substitution request would have led to a concurrent representation, it is clear that the substitution request implicated ethical concerns applicable to the successive representation of clients with adverse interests. (See rule 3-310(E).) In the successive representation context, "the chief fiduciary value jeopardized is that of client *confidentiality*," not loyalty. (*Flatt, supra,* 9 Cal.4th at p. 283; accord, *SpeeDee Oil, supra,* 20 Cal.4th at p. 1146.) The former client's expectation of confidentiality must be preserved to ensure " ' "the right of every person to freely and fully confer and confide in one having knowledge of the law, and skilled in its practice, in order that the former may have adequate advice and a proper defense." ' " (*SpeeDee Oil,* at p. 1146.) The attorney must maintain those confidences inviolate and preserve them at every peril to himself or herself. (Bus. & Prof. Code, § 6068, subd. (e).) Because of this duty, an attorney in actual possession of material confidential information from a former client may not represent an adverse party without the former client's consent. (Rule 3-310(E).)[7] Rule 3-310(E) addresses the conflict between a lawyer's duty to use all information at his or her disposal in order to represent a current client competently and the lawyer's continuing duty of loyalty to a former client with respect to information obtained during the course of the prior representation. (See Cal. State Bar, Com. on Prof. Responsibility, Ethics Opn. No. 1998-152 (1998) p. 5.)

---

[6] Rule 3-310(C) provides: "A member shall not, without the informed written consent of each client: [¶] (1) Accept representation of more than one client in a matter in which the interests of the clients potentially conflict; or [¶] (2) Accept or continue representation of more than one client in a matter in which the interests of the clients actually conflict; or [¶] (3) Represent a client in a matter and at the same time in a separate matter accept as a client a person or entity whose interest in the first matter is adverse to the client in the first matter."

[7] Rule 3-310(E) provides: "A member shall not, without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment."

 When a conflict arises out of the successive representation of a former and a current client, disqualification turns on whether there is a substantial relationship between the former representation and the current representation. (*SpeeDee Oil, supra*, 20 Cal.4th at p. 1146; *Flatt, supra*, 9 Cal.4th at p. 283.) "Where the requisite substantial relationship between the subjects of the prior and the current representations can be demonstrated, access to confidential information by the attorney in the course of the first representation (relevant, by definition, to the second representation) is *presumed* and disqualification of the attorney's representation of the second client is mandatory . . . ." (*Flatt*, at p. 283.) A substantial relationship is said to exist when it appears, by virtue of the nature of the former representation or the relationship of the attorney to his former client, that confidential information material to the current representation "would normally have been imparted to the attorney." (*Pour Le Bebe, Inc. v. Guess? Inc.* (2003) 112 Cal.App.4th 810, 823 [5 Cal.Rptr.3d 442] (*Pour Le Bebe*).) The court should focus on the similarities in the facts involved in the two representations, the legal questions posed, and the nature and extent of the attorney's involvement in each case. (*Ibid.*)

Here, the trial court stated, "When representing Rodney, Mr. Hove attempted to place responsibility for the instant charges upon defendant. Now, he seeks to implicate his former client [Rodney] for these crimes. To that end, Mr. Hove will have the benefit of what he learned when he represented Rodney at trial." Reasonably interpreted, this is an implicit finding that due to a substantial relationship between the two representations, it can be presumed that Hove obtained confidential information material to the prosecution of defendant.

Defendant contends that there is no substantial relationship between the two representations because the charges against Rodney for the Hayward rape had been dismissed by the time Hove became Rodney's attorney. But defendant disregards the undisputed facts that, in representing Rodney, Hove sought to implicate defendant in the Oakland sexual assault and to introduce evidence of the misidentification of Rodney in the Hayward case. Both representations involved the Hayward offenses, the subsequent police investigation, and misidentification by the victim; both representations involved the legal strategy of mistaken identification of the brothers; and Hove was intimately involved with the former representation as trial counsel for Rodney on the Alameda and Oakland offenses. (See *Pour Le Bebe, supra*, 112 Cal.App.4th at p. 823.) In preparing for trial, Rodney would normally have imparted confidences to Hove, for example, regarding his whereabouts at the time of the Hayward kidnapping and rape; any involvement he had before, during, or after the crime; his knowledge of any of the persons or locations involved in the crime; any information inculpating or exculpating defendant in the offenses; and any insights he had about mounting a defense based on the physical similarities between the brothers. On the undisputed facts, the

trial court properly concluded that there is a substantial relationship between the former representation of Rodney and the proposed representation of defendant. Hove was disqualified from representing defendant, absent an effective waiver of the conflict by Rodney.

### C. *Adequacy of Rodney's Waiver*

Defendant contends that even if there was a conflict of interest arising from Hove's former representation of Rodney, Rodney waived the conflict. The trial court concluded that Rodney's brief written waiver was inadequate, stating "[Rodney's waiver] is not the full and complete, knowing and intelligent waiver that this Court believes is required here. Rodney Baylis does not acknowledge the possibility that his brother, Patrick, will seek to inculpate him as the perpetrator of these offenses. The waiver makes no mention of the possibility that the District Attorney may attempt to call Mr. Hove as a witness or that Mr. Hove may be forced to disclose otherwise privileged attorney-client communications made to Mr. Hove. . . . The waiver is silent as to the possibility that information that Mr. Hove gained while representing Rodney may be used to assist Patrick, to Rodney's possible detriment. In sum, in contrast to Patrick Baylis' waiver, Rodney's waiver contains no evidence that he is aware of the drawbacks to waiving the conflict of interest."[8]

■ Denial of defendant's substitution request was effectively a determination that Hove was disqualified from representing Patrick. The trial court's power to disqualify an attorney derives from Code of Civil Procedure section 128, subdivision (a)(5), which authorizes a trial court to "control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it . . . ." (See *People v. Jones* (2004) 33 Cal.4th 234, 244, fn. 2 [14 Cal.Rptr.3d 579, 91 P.3d 939] (*Jones*).) This section applies in criminal cases, and the trial court's decision is reviewed for abuse of discretion. (*Ibid.*) The trial court's authority to deny a motion to substitute rests on similar grounds and should be given similar deference on appeal.

■ We conclude that the trial court did not abuse its discretion in requiring an *informed* waiver from Rodney in the circumstances of this case. Where a defendant seeks to waive his counsel's conflict of interest, the waiver must be a knowing and intelligent act " 'done with sufficient awareness of the relevant circumstances and likely consequences.' " (*People v.*

---

[8] The trial court was also concerned that the waiver signed by Rodney was too similar to a waiver that was the subject of a reversal by the Ninth Circuit in another case involving Hove and his representation of a criminal defendant where Hove had a conflict. (See *Lockhart v. Terhune* (9th Cir. 2001) 250 F.3d 1223.)

*Mroczko* (1983) 35 Cal.3d 86, 109–110 [197 Cal.Rptr. 52, 672 P.2d 835].) A waiver may be properly taken where the court has assured itself that (1) the defendant has discussed the potential drawbacks of joint representation with his attorney or outside counsel, (2) the defendant has been made aware of the dangers and possible consequences of joint representation in the case, (3) the defendant knows of his right to conflict-free representation, and (4) the defendant voluntarily wishes to waive that right. (*Id.* at p. 110.) That exacting standard is calculated to ensure a legitimate waiver of a defendant's constitutional right to conflict-free counsel and to insulate any conviction from a later challenge on appeal based on the conflict. (See *Alcocer v. Superior Court* (1988) 206 Cal.App.3d 951, 959 [254 Cal.Rptr. 72].)

■ Also instructive is the standard for former client consent under the Rules of Professional Conduct. Rule 3-310(E) requires the former client's "informed written consent" to any subsequent adverse representation implicating the duty of confidentiality. Such consent requires the former client's written agreement to the representation following written disclosure of the relevant circumstances and of the actual and reasonably foreseeable adverse consequences to the former client. (Rule 3-310(A).) The "informed written consent" requirement of rule 3-310(E) may not literally apply here. The State Bar's Standing Committee on Professional Responsibility and Conduct has indicated that the fact that a court presumes that counsel possesses material confidential information due to a substantial relationship between two representations does not necessarily mean that absent consent the counsel is subject to discipline under rule 3-310(E), because the rule requires the *actual* possession of confidential information. (Cal. State Bar, Com. on Prof. Responsibility, Ethics Opn. No. 1998-152, *supra*, at p. 8, fns. 7 & 8.) Nevertheless, the extent of disclosure required under the rule indicates that only an *informed* waiver of rights is adequate to protect the former client's interests.

Under any standard or definition of informed waiver, the trial court did not abuse its discretion in finding Rodney's waiver inadequate. The waiver simply states that "I have been advised that a conflict of interest may exist with Mr. Hove representing Patrick Baylis. I am aware of this and herby [*sic*] waive any conflict of interest regarding same." This language reflects no awareness of the nature and seriousness of the conflict involved. As the trial court pointed out, the waiver does not specifically address any of the potential adverse consequences of the representation, including that Hove's representation of defendant would likely involve an effort to implicate him in the Hayward rape, including by undermining the DNA evidence that exonerated Rodney. At the second to last hearing on the motion to substitute, the trial court told Hove that he should consider supplementing Rodney's "fairly general" written waiver, but Hove declined to obtain a more detailed waiver.

In the circumstances of this case, the trial court did not err in concluding that Rodney's waiver was inadequate and denying the motion to substitute on that ground.[9]

Defendant contends that Rodney's written waiver was adequate to waive any conflict arising from Hove's representation of defendant. Defendant cites *People v. Johnson* (1980) 105 Cal.App.3d 884, 892 [164 Cal.Rptr. 746], which held that a defendant, by failing to object, "impliedly consented" to being prosecuted by a district attorney who previously was the head of a law office that represented the defendant on a prior criminal complaint based on the same facts. Defendant contends that if the *Johnson* defendant could impliedly consent, then Rodney's express written consent must be adequate. *Johnson* is distinguishable, because there the defendant failed to object, entered a guilty plea, and then attempted to overturn the sentence on appeal. (*Ibid.*) The defendant thereby denied the trial court an opportunity to develop a factual record and determine whether an actual conflict existed. (*Ibid.*) Similarly distinguishable are decisions in civil cases such as *River West, Inc. v. Nickel* (1987) 188 Cal.App.3d 1297 [234 Cal.Rptr. 33], in which a former client was found to have impliedly consented to an adverse representation. There, the former client had knowledge of the adverse representation but unreasonably delayed asserting an objection; a finding of implied waiver was appropriate because of the unreasonableness of the delay and the great prejudice that would have resulted to the current client if disqualification were granted. (*Id.* at pp. 1309, 1313.)

■ In this case we are not confronted with an attempt by a defendant to overturn a conviction by raising a conflict that he could have—but did not—raise before the trial court. Neither are we confronted with an untimely motion to disqualify by a former client in a civil matter. Instead, we are dealing with denial of a motion to substitute due to the trial court's pretrial concerns about the adequacy of a former client's waiver. Where a trial court preparing for a criminal trial is confronted with an actual conflict of interest that may affect the integrity of those proceedings, the trial court is not obligated to accept as adequate a consent or waiver in whatever form it appears.

### D. *Defendant's Constitutional Claim*

Finally, we turn to defendant's contention that even if there was a conflict involving Rodney and even if Rodney did not adequately waive that conflict,

---

[9] There also is no indication that Rodney received the advice of independent counsel in deciding whether to waive the conflict of interest, and the trial court never had an opportunity to question or admonish Rodney about the waiver. Such measures certainly would have made the waiver more reliable but may not be necessary to obtain a valid waiver from a former client who is not a codefendant.

denial of the motion to substitute was an unconstitutional infringement on defendant's right to counsel. Defendant's contention is without merit.

■ Broadly speaking, this case implicates the tension between the trial court's power to disqualify counsel to maintain ethical standards in the successive representation context and the defendant's right to choose counsel. Under both the state and federal Constitutions, a defendant in a criminal case has a right to the assistance of counsel (*People v. Bonin* (1989) 47 Cal.3d 808, 833 [254 Cal.Rptr. 298, 765 P.2d 460]), and that right embraces the right to retain counsel of one's own choice, within limits (*Yorn v. Superior Court* (1979) 90 Cal.App.3d 669, 674 [153 Cal.Rptr. 295] (*Yorn*)).

■ The "essential aim" of the Sixth Amendment to the United States Constitution "is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." (*Wheat v. United States* (1988) 486 U.S. 153, 159 [108 S.Ct. 1692, 100 L.Ed.2d 140] (*Wheat*).) Under the federal Constitution, trial courts are allowed "substantial latitude" in refusing a defendant's waiver of a conflict of interest. (*Wheat,* at p. 163.) Some California courts have rejected the *Wheat* court's "paternalistic treatment" of defendants, concluding that the state Constitution makes a defendant "master of his own fate." (*Alcocer v. Superior Court, supra,* 206 Cal.App.3d at pp. 956–957.) Under *Alcocer,* California law broadly protects a defendant's right to waive a conflict of interest on the part of retained counsel. (*Id.* at pp. 956–957; see also *People v. Burrows* (1990) 220 Cal.App.3d 116, 122 [269 Cal.Rptr. 206].)

Respondent contends that *Alcocer v. Superior Court, supra,* 206 Cal.App.3d 951, is not good law and that, under both the state and federal Constitutions, trial courts have substantial latitude in refusing a waiver of a conflict of interest. (See *Wheat, supra,* 486 U.S. at p. 163.) The California Supreme Court's decision in *Jones, supra,* 33 Cal.4th 234, may be read to offer support for this contention. The court upheld removal of a defendant's appointed counsel over the defendant's objection because counsel had a conflict of interest involving a former client who may have been involved in the murder for which the defendant was on trial. (*Id.* at pp. 237–238, 241–242, 244–245.) The court questioned whether certain of its earlier decisions, offering broad protection for a defendant's right to choose counsel, were decided under the federal or state Constitutions, reasoning that if they were decided under the federal Constitution they were superseded by *Wheat.* (*Jones,* at pp. 243–244.)

Nevertheless, *Jones* declined to overrule *Alcocer*, stating "[w]e need not decide whether the state Constitution permits a defendant to insist on being represented by a *retained* attorney who has a potential conflict of interest, for here defendant's attorney was appointed by the court, not privately retained by defendant." (*Jones*, at p. 245, fn. 3.)

We need not decide whether *Alcocer v. Superior Court, supra,* 206 Cal.App.3d 951, is still good law after *Jones, supra,* 33 Cal.4th 234, because, even if we assume that the California Constitution is more protective of a defendant's right to choose retained counsel, disqualification of Hove was not unconstitutional. If the state Constitution is more protective, then the applicable standard, set forth in *People v. Crovedi* (1966) 65 Cal.2d 199, 208 [53 Cal.Rptr. 284, 417 P.2d 868], is that the defendant's right to counsel of choice may be forced to yield only where it would result in a "disruption of the orderly processes of justice unreasonable under the circumstances of the particular case." (See *Jones, supra,* 33 Cal.4th at pp. 251–252 (conc. opn. of Werdegar, J.) [stating that the rule under the more expansive reading of the California Constitution is set forth in *Crovedi,* quoted in *People v. McKenzie* (1983) 34 Cal.3d 616 [194 Cal.Rptr. 462, 668 P.2d 769]].) This stringent test has been satisfied because to allow Hove to represent defendant would create an actual and substantial conflict of interest implicating Hove's duty of confidentiality to his former client Rodney; as discussed *ante,* Rodney did not adequately waive the conflict.

This case presents different considerations than those discussed in *Alcocer v. Superior Court, supra,* 206 Cal.App.3d 951. The question before us is not whether defendant could waive the conflict but whether the trial court could disqualify Hove to enforce ethical standards meant to protect Rodney's interests. That a defendant is "master of his own fate" does not mean that the trial court must disregard the interests of others potentially adversely affected by the representation and the effect of the conflict on the integrity of the judicial process. Defendant could not waive those considerations. (*People v. Peoples* (1997) 51 Cal.App.4th 1592, 1599 [60 Cal.Rptr.2d 173].)

It is established that a criminal defendant's right to counsel of his or her choosing may be forced to yield in order to enforce the duty of confidentiality where the former client is a codefendant. As the Supreme Court explained in *Leversen v. Superior Court* (1983) 34 Cal.3d 530 [194 Cal.Rptr. 448, 668 P.2d 755], "An attorney is forbidden to use against a former client any confidential information that was acquired during that client relationship. [Citations.] Moreover, the attorney has a duty to withdraw, or apply to a court for permission to withdraw, from representation that violates those obligations. [Citation.] So important is that duty that it has been enforced against a defendant's attorney at the [insistence] of his

former client (who was also a codefendant) even at the expense of depriving the defendant of his choice of counsel." (*Id.* at p. 538, citing *Yorn, supra,* 90 Cal.App.3d 669.)

In *Yorn, supra,* 90 Cal.App.3d 669, defendant Yorn retained Attorney Morgan. Yorn's codefendant, Hesemeyer, sought to disqualify Morgan because Morgan had previously represented Hesemeyer and had obtained confidential information relevant to the pending case. (*Id.* at p. 672.) The trial court granted the motion to disqualify and Yorn filed a petition for writ of mandamus, contending the removal of Morgan violated his constitutional right to counsel of his own choice. (*Id.* at p. 673.) The court noted that the case demonstrated a classic confrontation between an accused's right to counsel of choice and counsel's duty to preserve his former client's confidences. (*Id.* at p. 674.) Although Yorn was willing to waive any error arising from Morgan's conflicting interests, Yorn could not waive Hesemeyer's right to confidentiality. The court concluded, "Yorn's qualified right to be represented by counsel of choice is outweighed by significant countervailing considerations . . . to submit to Yorn's claim of unfettered choice of counsel would work an unnecessary but serious prejudice to the interests of his codefendant and unreasonably infringe upon her own right of due process. [¶] Balancing Yorn's limited right to retain counsel of his own choice against his codefendant's right to a fair trial coupled with the paramount objective of maintaining public confidence in the impartiality of the courts and the integrity of its professional bar, the former must yield ' "to considerations of ethics which run to the very integrity of our judicial process." ' " (*Id.* at p. 677.)

Here, Rodney was a former indicted suspect who conceivably could have been prosecuted again[10] had Hove been successful in implicating him or had Hove been successful in undermining the DNA evidence.[11] Although Rodney signed a declaration waiving the conflict of interest, there is no indication that Rodney was actually aware of the potential adverse consequences of the representation. Furthermore, this case involved denial of a motion to substitute rather than involuntary *removal* of a defendant's counsel. Removal of counsel poses a greater threat to the right to counsel because the removal interferes with an attorney-client relationship that has already been established. (*Jones, supra,* 33 Cal.4th at p. 244.)

---

[10] Because the charge against Rodney for the Hayward offenses was dismissed before the start of trial, jeopardy did not attach. (*People v. Superior Court (Marks)* (1991) 1 Cal.4th 56, 63–64 [2 Cal.Rptr.2d 389, 820 P.2d 613].)

[11] Although the DNA evidence admitted at trial was ultimately quite powerful evidence implicating defendant and exonerating Rodney, the trial court's decision on the motion to substitute occurred during pretrial proceedings before that evidence was developed and when the ultimate dimensions and significance of the conflict of interest were difficult to predict. (See *Wheat, supra,* 486 U.S. at pp. 162–163; *Jones, supra,* 33 Cal.4th at pp. 241–242.)

It appears that defendant would have us adopt a blanket rule that a conflict involving a former client who is not a codefendant will not justify denial of a motion to substitute so long as the defendant on trial freely and intelligently waives the conflict. It would seriously impact the integrity of the judicial process and subvert the basic purpose of the relevant standards of professional responsibility were we in every instance to compel trial courts to disregard defense counsel's serious ethical conflicts affecting nondefendant former clients in the name of preserving the defendant's right to choose counsel. (See *People v. Peoples, supra,* 51 Cal.App.4th at p. 1599; *Yorn, supra,* 90 Cal.App.3d at p. 676.)

"[U]ltimately the issue involves a conflict between a client's right to counsel of his choice and the need to maintain ethical standards of professional responsibility. 'The preservation of public trust both in the scrupulous administration of justice and in the integrity of the bar is paramount. . . . (The client's recognizably important right to counsel of his choice) must yield, however, to considerations of ethics which run to the very integrity of the judicial process.' " (*Comden v. Superior Court* (1978) 20 Cal.3d 906, 915 [145 Cal.Rptr. 9, 576 P.2d 971]; accord, *SpeeDee Oil, supra,* 20 Cal.4th at p. 1145.) *Comden* applies in a criminal case presenting a sufficiently serious ethical conflict. (See *People v. Peoples, supra,* 51 Cal.App.4th at p. 1599.) Even if the California Constitution is interpreted as more protective of the right to retained counsel of choice than the federal Constitution, a criminal defendant's right to counsel of choice may be forced to yield where it would result in a "disruption of the orderly processes of justice unreasonable under the circumstances of the particular case." (*People v. Crovedi, supra,* 65 Cal.2d at p. 208.) Here, the trial court was faced with the possibility that Hove would use confidential information acquired during the representation of Rodney in order to implicate Rodney in the offenses with which defendant was charged. "Protecting the confidentiality of communications between attorney and client is fundamental to our legal system." (*SpeeDee Oil, supra,* 20 Cal.4th at p. 1146; see also *Yorn, supra,* 90 Cal.App.3d at p. 675.)[12] We conclude that where confronted with an actual and substantial conflict of interest involving counsel's duty of confidentiality to a former client, a trial court may exercise its discretion to disqualify the conflicted attorney absent an informed waiver from the former client.

---

[12] Of course, not all violations of ethical rules mandate disqualification of counsel. (See *Gregori v. Bank of America* (1989) 207 Cal.App.3d 291, 303 [254 Cal.Rptr. 853]; *Hetos Investments, Ltd. v. Kurtin* (2003) 110 Cal.App.4th 36, 47 [1 Cal.Rptr.3d 472].)

II., III.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The judgment is affirmed.

Jones, P. J., and Simons, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 13, 2006, S144619.

---

*See footnote, *ante*, page 1054.