Filed 6/21/22  P. v. Aldrete CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> RAUL J. ALDRETE, <br><br> Defendant and Appellant. | F083565 <br><br> (Kern Super. Ct. No. DF015554B) <br><br><br> **OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  David E. Wolf, Judge.

Patrick J. Hennessey, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman and Erin Doering, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*] Before Hill, P. J., Meehan, J. and De Santos, J.

## INTRODUCTION

Appellant and defendant Raul J. Aldrete entered into a negotiated disposition and was sentenced to eight years in prison. On appeal, he asserts the trial court should have granted his motion to withdraw his plea because the attorney who negotiated his plea agreement, and the attorney who represented him at the plea hearing, had conflicting interests with other clients, he did not knowingly and intelligently waive these conflicts, and the conflicts were prejudicial. We affirm.

## FACTS[1]

Correctional Officers Garcia, Prieto, and Dominguez reported they were on duty in the recreation yard at Kern Valley State Prison on October 29, 2021, when they observed three inmates, identified as appellant Aldrete and codefendants Jonathon Pedraza and Richard Perez, attack inmate Luis Mariscal with what appeared to be weapons. Mariscal was lying on the ground in the fetal position and covering his head. The three suspects stood over Mariscal and were repeatedly striking his face and upper torso in downward, stabbing-type motions, with what appeared to be inmate-made weapons.

The officers ordered all inmates in the yard to get down to the ground. Everyone complied except appellant, Pedraza, and Perez. The three suspects ignored the repeated orders and continued to attack Mariscal. The prison staff fired nonlethal impact rounds at the three suspects, and they finally stopped attacking Mariscal and assumed the prone

---

[1] As will be explained below, appellant entered a plea before the preliminary hearing was held. At his plea hearing, the parties stipulated there was a factual basis for the plea based on the probable cause statement and the reports provided during discovery.

Appellant moved to augment the instant appellate record with the correctional officers' incident reports about the prison assault that resulted in the charges filed against him. Appellant argued the incident reports were relevant to support his argument that his two attorneys had prejudicial conflicts that affected the negotiated disposition and the length of his indicated term. This court granted appellant's augmentation motion for these incident reports. The following facts are from the incident reports that were augmented to the record.

position on the ground.  The three suspects were placed in restraints and removed from the yard.

Mariscal had multiple severe injuries consistent with being inflicted by weapons. There was a large amount of blood on his facial area, upper torso, and back.  Mariscal was transported to a local hospital for treatment.

The officers discovered two inmate-manufactured weapons in the area where the assault occurred.  One weapon was found as a result of Officer Garcia's observations after the three suspects finally went to the ground.  Officer Garcia reported that as officers approached the suspects to restrain them, he saw inmate Perez throw an object away from him.  Garcia reported the object was an inmate-manufactured weapon.

Each weapon consisted of a flat piece of metal that was approximately five inches long and bent at an angle, one end was sharpened to a point, and a white cloth was fashioned as a handle.

There was suspected blood on appellant's hat and shoes and also on the clothing of Perez and Pedraza.  Appellant had abrasions, swelling, and dried blood on both hands, Perez has abrasions and dried blood on both hands, and Pedraza had abrasions on one hand.

## PROCEDURAL BACKGROUND

On October 14, 2020, a complaint was filed in the Superior Court of Kern County charging appellant Aldrete and codefendants Perez and Pedraza with count 1, assault with a deadly weapon upon Mariscal while confined in Kern Valley State Prison (Pen. Code, § 4501, subd. (a)); and count 2, assault by means likely to cause great bodily injury upon Marscal (*id*., at subd. (b)), and that each defendant personally inflicted great bodily injury on the victim.  (§ 12022.7, subd. (a).)

It was also alleged that appellant had three prior serious felony conviction enhancements (§ 667, subd. (a)) and three prior strike convictions; Pedraza had one prior

3.

serious felony conviction enhancement and one prior strike conviction; and Perez had one prior serious felony conviction enhancement and one prior strike conviction.

**Appointment of Mr. Chase and Initial Appearances**

On November 9, 2020, appellant made his first appearance in court. The court appointed Eric Chase from the Indigent Defense Program to represent appellant, who then pleaded not guilty and denied the special allegations.

On December 8, 2020, and January 28 and February 25, 2021, appellant appeared with Mr. Chase and waived time, and the court granted motions to continue the preliminary hearing.

**Change of Plea Hearing**

On June 2, 2021, the court convened a change-of-plea hearing. Appellant was present without Mr. Chase. Codefendant Pedraza appeared with his attorney, Mr. Marquez.

At the beginning of the hearing, the court stated:

> "THE COURT:    "Okay. So Mr. Chase was just here. He had to go to Shafter. *He says he has somewhat of a conflict because he represented the victim in this case*, and that he and Mr. Marquez had talked to both defendants and they were both okay with me letting Mr. Chase go out and Mr. Marquez representing both Mr. Aldrete and Mr. Pedraza." (Italics added.)

Mr. Marquez agreed with the court about what happened.

> "THE COURT:    All right. So, gentlemen, I can continue this to another day and get Mr. Aldrete his own different attorney if that's what you want. [¶] Mr. Aldrete, what do you want to do?

> "[APPELLANT]:    We can continue.

> "THE COURT:    Okay. I don't really have a problem with that. I know you also talked to Mr. Chase. The other case is over, so I don't know if it was necessary, but I understand the four of you was Mr. Chase, Mr. Marquez, Mr. Aldrete, and Mr. Pedraza, have had a chance to chat. [¶] So, Mr. Aldrete, you're okay proceeding with Mr. Marquez?

4.

"[Appellant]: Yeah, that's fine.

"THE COURT:      All right.  Mr. Marquez, you've discussed with Mr. Aldrete representing both Mr. Pedraza and Mr. Aldrete.  And at this time, because there's a negotiated disposition and it's for an identical eight years at half time for both, so there's no – there's no one is getting a better deal.  At this point simply for the plea, you don't believe you have a conflict?

"MR. MARQUEZ:          I don't believe so.

"THE COURT:      If something falls apart, gentlemen, we're going to trial.  We would want to get Mr. Aldrete another attorney.  But we can cross that bridge.  At this point it's just for the entry of the plea, so I don't see a particular problem."  (Italics added.)

The court asked codefendant Pedraza if he objected to Mr. Marquez representing appellant, and Pedraza said no.  The prosecutor said he had no objection, and Mr. Marquez again stated he could represent both defendants.

The court appointed Mr. Marquez to represent both appellant and Pedraza.  The court addressed the negotiated disposition for appellant:  he would plead to count 2 and admit one prior strike conviction for the midterm of four years, doubled to eight years as the second strike term, with the remaining charges dismissed.

The court asked appellant if he had any questions.  Appellant asked if he had a strike.  The court explained count 2 was not a strike, and that it would dismiss count 1, the other two prior strikes, and great bodily injury and prior serious felony enhancements.  Appellant said he understood.

The court reviewed appellant's change of plea form and again advised appellant that he had the right to continue the plea for a few days to get another lawyer.  Appellant declined.   Mr. Marquez stated he had sufficient time to discuss the plea with appellant.

Thereafter, appellant pleaded no contest to count 2 and admitted one prior strike conviction.  The court granted the People's motion to dismiss count 1, the great bodily injury and prior serious felony enhancements, and the other two prior strike convictions, on condition appellant's plea and codefendant Pedraza's plea remained in full force and

5.

effect. The parties stipulated to the factual basis as the probable cause statements and the reports provided during discovery.

The court also accepted codefendant Pedraza's no contest plea to count 2 and his admission of one prior strike, for an indicated second strike sentence of eight years and dismissal of the other count and allegation, again on condition that the pleas for appellant and Pedraza remain in full force and effect. The court set the sentencing hearing for August 2021.

**Discharge of Mr. Marquez and Appointment of Another Attorney**

On August 27, 2021, the court convened the scheduled sentencing hearing. Appellant appeared with Mr. Marquez but verbally requested to withdraw his plea. The court discharged Mr. Marquez from representing appellant and continued the sentencing hearing.

On August 31, 2021, the court appointed Khan Nguyen of the Indigent Defense Program to represent appellant. The court continued the sentencing hearing.

On October 14, 2021, the court convened another hearing. Appellant was present and represented by Khanh Harrott. The minute order states appellant was transported from prison to meet with his attorney.

## MOTION TO WITHDRAW PLEA

On October 28, 2021, appellant, represented by Mr. Harrott, filed a motion to withdraw his no contest plea and admission to the prior strike conviction.

The motion asserted there was good cause to withdraw the plea under section 1018 because Mr. Chase, appellant's first attorney, had a conflict of interest when he was appointed to represent him since he previously represented the victim in this case. There was another conflict of interest when appellant was jointly represented by Mr. Marquez, who was also representing codefendant Pedraza when he entered the plea, appellant's waiver of the conflict was not knowing and voluntary, and his constitutional right to counsel was violated.

6.

"Attorney Chase's representation from its early beginning was tainted from his prior representation of the victim and Attorney Marquez's representation on behalf of Aldrete was solely limited to taking his plea in a packaged deal so that his client can also take plea on the same day that Attorney Chase was relieved. The effect was nobody was in Mr. Aldrete's corner from the beginning since Attorney Chase represented the victim. Attorney Marquez's sole purpose was to take a plea only and on the same day that Chase was relieved. What was also missing was from the short time Attorney Chase was relieved to the time Attorney Marquez took the plea, was real and actual representation guaranteed under the Sixth Amendment for Mr. Aldrete.

"Attorney Marquez went over the felony advisal form with Mr. Aldrete. But Attorney Marquez did not advise Mr. Aldrete on his defense(s), any mitigating circumstances that Mr. Aldrete might have had, the strengths of the case for Mr. Aldrete, if it was in Mr. Aldrete's best interest to accept a plea deal, or even if Mr. Aldrete wanted to take his case to trial. Attorney Marquez's role to Mr. Aldrete was limited and restricted to taking the plea."

Appellant acknowledged that at the plea hearing, the court asked if he wanted another attorney, but argued his waiver was not knowing and voluntary because the court said it did not see any reason for a conflict, and it failed to advise him of the conflict created by being represented by Mr. Marquez, whose client wanted to agree to the plea.

**The People's Opposition**

On November 8, 2021, the People filed opposition to the motion to withdraw and argued that while successive representation of a client may form a basis for a conflict of interest, "the disqualification turns on whether there was a substantial relationship between the former representation and the current representation." The prosecutor argued there was no "substantial relationship" between the representations. Mr. Chase previously represented the victim, but that case was over by the time he began to represent appellant, and there was insufficient evidence of an actual conflict that violated appellant's right to counsel.

The People further argued that Mr. Marquez's representation of both defendants at the plea hearing did not create a conflict since appellant repeatedly indicated his

7.

willingness to be represented by Mr. Marquez and accept the plea offer.  The People argued there was no evidence that he entered the plea by mistake, duress, ignorance, or any other factor overcoming his free will and prejudicing his decision.

**Denial of Motion to Withdraw and Sentencing**

On November 18, 2021, the court convened the continued sentencing hearing. Appellant was present and represented by Ms. Nguyen.  Codefendant Pedraza was present with Mr. Marquez.

Ms. Nguyen informed the court that appellant had just told her that he wanted to continue the hearing on his pending motion to withdraw his plea, because his family was hiring another attorney to represent him.  The court asked appellant why that attorney was not present.  Appellant stated his family was "in the middle of hiring him right now, retaining him.  So I had just spoke to him yesterday."  Appellant stated he thought the next scheduled hearing was supposed to be in two weeks.

The court noted appellant entered the plea in June 2021, Ms. Nguyen was appointed in August 2021, and appellant had plenty of time to hire a different attorney but waited until the last minute to do so.

Mr. Marquez, on behalf of codefendant Pedraza, opposed a continuance because Pedraza had entered his plea nearly six months ago, and he was ready to be sentenced.

The court denied the motion to continue.  The court turned to appellant's motion to withdraw the plea and also denied that motion.

> "I have read and considered the transcript.  I do actually also remember this case.  We had Mr. Marquez stand in as a courtesy.
>
> "Mr. Chase is the one that negotiated the resolution, talked to his client.  And Mr. Aldrete agreed to that procedure so that Mr. Chase could get somewhere else.
>
> "Mr. Aldrete cannot benefit from that decision.  He could've come back the next day.  He could have come back the next time Mr. Chase was here.  And he did not want to do that."

8.

The court found section 1018 required good cause to withdraw a plea, appellant had the burden to show good cause and prejudice by clear and convincing evidence, a self-serving statement was insufficient to establish good cause, "[a]nd I don't even have [a] self-serving statement.  [¶]  So the motion is denied."

The court proceeded with sentencing.  As to appellant, the court imposed the midterm of four years for count 2, doubled to eight years as the second strike term, fully consecutive to any other sentence currently imposed, consistent with the negotiated disposition.  The court imposed the same sentence for codefendant Pedraza.

On November 19, 2021, appellant filed a timely notice of appeal and requested and received a certificate of probable cause as to whether appellant's Sixth Amendment rights were violated when he entered his plea.

## DISCUSSION

Appellant argues the trial court should have granted his motion to withdraw his plea because (1) there was an actual conflict of interest between appellant and Mr. Chase, who negotiated the plea, since Mr. Chase previously represented the victim; (2) the court failed to conduct a hearing as to the nature of Mr. Chase's conflict based on that prior representation, and whether it affected his representation of appellant in negotiating the plea agreement; and (3) the court again committed error by appointing Mr. Marquez to represent both appellant and codefendant Pedraza at the plea hearing.

### A.    *Motion to Withdraw Plea*

"At any time before judgment, or within six months after an order granting probation if entry of judgment is suspended, a trial court may permit a defendant to withdraw a guilty plea for 'good cause shown.'  (§ 1018.)  'Mistake, ignorance or any other factor overcoming the exercise of free judgment is good cause for withdrawal of a guilty plea' under section 1018 [citation], and section 1018 states that its provisions 'shall be liberally construed … to promote justice.'  A defendant seeking to withdraw a guilty

9.

plea on grounds of mistake or ignorance must present clear and convincing evidence in support of the claim." (*People v. Patterson* (2017) 2 Cal.5th 885, 894.)

"A plea may not be withdrawn simply because the defendant has changed his [or her] mind." (*People v. Nance* (1991) 1 Cal.App.4th 1453, 1456.) "[A] defendant's self-serving statement … [regarding whether] with competent advice he or she *would* [or would not] have accepted a proffered plea bargain, is insufficient in and of itself to sustain the defendant's burden of proof as to prejudice, and must be corroborated independently by objective evidence. A contrary holding would lead to an unchecked flow of easily fabricated claims." (*In re Alvernaz* (1992) 2 Cal.4th 924, 938; *People v. Breslin* (2012) 205 Cal.App.4th 1409, 1421.)

"Where a defendant has been denied the effective assistance of counsel in entering a plea of guilty, he is entitled to reversal and an opportunity to withdraw his plea if he so desires." (*People v. Hunt* (1985) 174 Cal.App.3d 95, 104.) To successfully challenge a guilty plea on the basis of ineffective assistance of counsel, a defendant must establish both: (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's incompetence, the defendant would not have pleaded guilty and would have insisted on proceeding to trial. (*Hill v. Lockhart* (1985) 474 U.S. 52, 58–59; *Strickland v. Washington* (1984) 466 U.S. 668, 687; *People v. Breslin, supra,* 205 Cal.App.4th at pp. 1418–1419.)

"A trial court's decision whether to permit a defendant to withdraw a guilty plea under section 1018 is reviewed for abuse of discretion. [Citation.] '[W]hen a trial court's decision rests on an error of law, that decision is an abuse of discretion.' " (*People v. Patterson, supra,* 2 Cal.5th at p. 894.)

**B.** *Conflicts of Interest*

"A defendant's Sixth Amendment guarantee to effective assistance of counsel includes the right to counsel free from conflicts of interest. [Citations.] 'Conflicts of interest broadly embrace all situations in which an attorney's loyalty to, or efforts on

behalf of, a client are threatened by his responsibilities to another client ….' " (*People v. Woodruff* (2018) 5 Cal.5th 697, 739.)

"Representation of a criminal defendant entails certain basic duties. Counsel's function is to assist the defendant, and hence counsel owes the client a duty of loyalty, a duty to avoid conflicts of interest." (*Strickland v. Washington, supra,* 466 U.S. at p. 688; *People v. Doolin* (2009) 45 Cal.4th 390, 411.) "An attorney labors under an actual conflict of interest when he 'fail[s] to represent defendant as vigorously as he might have, had there been no conflict.' " (*People v. Woodruff*, *supra*, 5 Cal.5th at p. 740.) "Professional ethics demand that an attorney avoid conflicts of interest in which duties owed to different clients are in opposition. [Citations.]" (*People v. Baylis* (2006) 139 Cal.App.4th 1054, 1064, fn. omitted (*Baylis*).)

"A conflict of interest may arise from an attorney's concurrent or successive representation of clients with adverse interests. [Citation.] These two situations implicate distinct ethical concerns and public policies." (*Baylis, supra,* 139 Cal.App.4th at p. 1064.)

Appellant's contentions in this case involve alleged conflicts arising from both successive and concurrent representation.

### C. *Successive Representation*

Appellant's first conflict claim is based on Mr. Chase's prior representation of Mariscal, the victim of the charged offenses in this case. He argues Mr. Chase's successive representation of him amounted to a conflict and was prejudicial.

"Conflicts may … arise in situations in which an attorney represents a defendant in a criminal matter and *currently has or formerly had an attorney-client relationship with a person who is a witness in that matter*. [Citations.] [¶] Such a conflict springs from the attorney's duty to provide effective assistance to the defendant facing trial and his fiduciary obligations to the witness with whom he has or had a professional relationship. [Citation.] 'An attorney is forbidden to use against a [present or] former

client any confidential information … acquired during that client relationship. [Citations.] Moreover, the attorney has a duty to withdraw, or apply to a court for permission to withdraw, from representation that violates those obligations. [Citation.] So important is that duty that it has been enforced against a defendant's attorney at the instance of his former client (who was also a codefendant) even at the expense of depriving the defendant of his choice of counsel. [Citation.]' [Citation.] In a word, a conflict based on the attorney's obligations to a criminal defendant and to a present or former client, 'as well as conflicts arising out of simultaneous representation of codefendants, may impair a defendant's constitutional right to assistance of counsel.' " (*People v. Bonin* (1989) 47 Cal.3d 808, 835, italics added.)

"In the successive representation context, 'the chief fiduciary value jeopardized is that of client *confidentiality,*' not loyalty. [Citations.] The former client's expectation of confidentiality must be preserved to ensure ' " 'the right of every person to freely and fully confer and confide in one having knowledge of the law, and skilled in its practice, in order that the former may have adequate advice and a proper defense.' " ' [Citation.] The attorney must maintain those confidences inviolate and preserve them at every peril to himself or herself. [Citation.] Because of this duty, an attorney in actual possession of material confidential information from a former client may not represent an adverse party without the former client's consent. [Citation.]" (*Baylis, supra*, 139 Cal.App.4th at p. 1065, italics in original.)

"When a conflict arises out of the successive representation of a former and a current client, *disqualification turns on whether there is a substantial relationship between the former representation and the current representation*. [Citations.] 'Where the requisite substantial relationship between the subjects of the prior and the current representations can be demonstrated, access to confidential information by the attorney in the course of the first representation (relevant, by definition, to the second representation) is *presumed* and disqualification of the attorney's representation of the second client is

mandatory ….' [Citation.] A substantial relationship is said to exist when it appears, by virtue of the nature of the former representation or the relationship of the attorney to his former client, *that confidential information material to the current representation 'would normally have been imparted to the attorney*.' [Citation.] The court should focus on the similarities in the facts involved in the two representations, the legal questions posed, and the nature and extent of the attorney's involvement in each case." (*Baylis, supra*, 139 Cal.App.4th at p. 1066, italics added.)

### 1. Analysis

Appellant's arguments about the conflicted representation begin with Mr. Chase's representation and negotiation of his plea agreement. The evidence about Mr. Chase's prior representation of Mariscal, however, is "an exceedingly weak foundation upon which to build such a theory." (See, e.g., *People v. Mai* (2013) 57 Cal.4th 986, 1011.) As explained above, in cases involving successive representation, the " 'chief fiduciary value jeopardized is that of client *confidentiality*.' " (*M'Guinness v. Johnson* (2015) 243 Cal.App.4th 602, 613.)

The only evidence in the record about an alleged improper successive representation is based on the court's statements at the beginning of the change of plea hearing on June 2, 2021. The court explained Mr. Chase had been compelled to leave and attend a hearing in Shafter, and he had disclosed a possible conflict. The court stated Mr. Chase previously represented Mariscal, the victim of the charged offenses in this case. The court further stated that based on Mr. Chase's statements, "[t]he other case is over," and he did not know if Mr. Chase's withdrawal was necessary.

On August 31, 2021, the court appointed Ms. Nguyen to represent appellant in place of Mr. Marquez. On October 28, 2021, appellant filed a motion to withdraw his plea based on the alleged conflicts. On November 18, 2021, the court held the hearing on the motion. Despite this passage of time between the change-of-plea hearing and the hearing on the motion to withdraw, appellant failed to produce any evidence to further

13.

address the nature and extent of Mr. Chase's prior representation of Mariscal. Thus, the only evidence before both the trial court and this court about the potential conflict arising from Mr. Chase's successive representation of Mariscal and appellant was limited to what the court stated at the change of plea hearing – that Mr. Chase previously represented Mariscal, and prior case was over.

There is no evidence that Mariscal was charged with committing any offenses against appellant, his codefendents, or anyone else arising from the prison assault that was the basis for the charged offenses in this case. There is no evidence that appellant or his codefendants were somehow involved or implicated in the prior case where Mr. Chase represented Mariscal.

As explained above, disqualification in a successive representation case turns on whether there was a substantial relationship between the former and current representation, where confidential information material to the current representation would normally have been imparted to the attorney, and the attorney was in "actual possession of material confidential information" that meant he could not represent appellant without appellant's consent. (*Baylis, supra*, 139 Cal.App.4th at p. 1065.)

Based on the record before this court, there is nothing in the record to show a substantial relationship between the former and current representation, Mr. Chase's prior representation of Mariscal apparently occurred in a case unrelated to the assault that appellant and his two codefendants were charged with committing against Mariscal at the prison, there is nothing in the record to refute the court's further explanation that the "other case" was over at the time of the plea hearing, thus indicating that Mr. Chase no longer represented Mariscal, and there is no evidence or even an inference that Mr. Chase was in actual possession of material confidential information that could have affected his representation of appellant in negotiating the plea agreement.

14.

**D.**     *Concurrent Representation*

Appellant next argues that Mr. Marquez's joint representation of appellant and codefendant Pedraza at the plea and subsequent hearings resulted in an improper concurrent representation that was prejudicial to his interests.

Conflicts may also arise "in circumstances in which one attorney represents more than one defendant in the same proceeding.  [Citations.]  In such cases there is at least the possibility that 'the interests of the defendants may diverge at some point so as to place the attorney under inconsistent duties' [citation] and thereby undermine his loyalty to, or efforts on behalf of, one or all.  Such a conflict, it is plain, can result in the infringement, or even the denial, of the defendant's constitutional right to the effective assistance of counsel." (*People v. Bonin*, *supra*, 47 Cal.3d at p. 835.)  "Concurrent representation of clients with adverse interests compromises an attorney's duty of loyalty." (*Baylis, supra*, 139 Cal.App.4th at p. 1065.)

"The most egregious conflict of interest is representation of clients whose interests are directly adverse in the same litigation.  [Citation.]  Such patently improper dual representation suggests to the clients – and to the public at large – that the attorney is completely indifferent to the duty of loyalty and the duty to preserve confidences.  However, the attorney's actual intention and motives are immaterial, and the rule of automatic disqualification applies.  'The rule is designed not alone to prevent the dishonest practitioner from fraudulent conduct,' but also to keep honest attorneys from having to choose between conflicting duties, or being tempted to reconcile conflicting interests, rather than fully pursuing their clients' rights.  [Citation.]  The loyalty the attorney owes one client cannot be allowed to compromise the duty owed another." (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1147.)

### 1. Analysis

Appellant asserts that the court improperly appointed Mr. Marquez to represent both appellant and Pedraza at the change-of-plea hearing because the two clients had conflicting interests. In contrast to successive or prior representation cases, the primary value at stake in concurrent or dual representation cases "is the attorney's duty – and the client's legitimate expectation – of *loyalty*, rather than confidentiality.' " (*M'Guinness v. Johnson, supra,* 243 Cal.App.4th at p. 613.) We have already found that there is no evidence Mr. Chase violated any prohibitions against successive representation. By the time the court appointed Mr. Marquez to represent both appellant and Pedraza, Mr. Chase had already negotiated the plea agreement and indicated sentence for appellant, and appellant agreed to that agreement. At that point, Mr. Marquez's duties were to ensure the court fully advised appellant of his constitutional rights, appellant knowingly and intelligently waived those rights, the court did not withdraw its approval of the plea agreement, and the indicated sentence was imposed at the sentencing hearing. There is no evidence that Mr. Marquez failed to represent appellant's interests when he entered the negotiated plea that had already been agreed to.

### E. *Waiver of Conflict and Prejudice*

Appellant asserts that both Mr. Chase and Mr. Marquez should not have represented him because of, respectively, the alleged conflicts arising from their successive and concurrent representation issues. Appellant further asserts the court failed to explain the impact of these conflicts and thus obtain his knowing, intelligent, and voluntary waivers, and the errors were prejudicial and require remand to either withdraw his plea or a further hearing on the nature and extent of the conflicts.

"In order to safeguard a criminal defendant's constitutional right to the assistance of conflict-free counsel and thereby keep criminal proceedings untainted by conflicted representation, the United States Supreme Court has laid down certain essentially prophylactic rules in this area." (*People v. Bonin, supra*, 47 Cal.3d at p. 836.) "When the

trial court knows, or reasonably should know, of the possibility of a conflict of interest on the part of defense counsel, it is required to make inquiry into the matter." (*Ibid.*)

> "The trial court is obligated not merely to inquire but also to act in response to what its inquiry discovers. [Citation.] In fulfilling its obligation, it may, of course, make arrangements for representation by conflict-free counsel. [Citation.] *Conversely, it may decline to take any action at all if it determines that the risk of a conflict is too remote.* [Citation.] In discharging its duty, it must act ' "… with a caution increasing in degree as the offenses dealt with increase in gravity." ' [Citation.]

> "After the trial court has fulfilled its obligation to inquire into the possibility of a conflict of interest and to act in response to what its inquiry discovers, the defendant may choose the course he wishes to take. *If the court has found that a conflict of interest is at least possible, the defendant may, of course, decline or discharge conflicted counsel. But he may also choose not to do so: 'a defendant may waive his right to the assistance of an attorney unhindered by a conflict of interests*.' [Citations.]

> "To be valid, however, 'waivers of constitutional rights must, of course, be "knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences[,]" … [and] must be unambiguous and "without strings." ' [Citations.]

> "Before it accepts a waiver offered by a defendant, the trial court need not undertake any 'particular form of inquiry …, but, at a minimum, … must assure itself that (1) the defendant has discussed the potential drawbacks of [potentially conflicted] representation with his attorney, or if he wishes, outside counsel, (2) that he has been made aware of the dangers and possible consequences of [such] representation in his case, (3) that he knows of his right to conflict-free representation, and (4) that he voluntarily wishes to waive that right.' " (*People v. Bonin, supra*, 47 Cal.3d at pp. 836–837.)

The defendant's waiver "of a possible attorney conflict of interest is not invalid simply because all conceivable ramifications of the potential conflict were not explored or explained, and the waiver does not extend only to those matters discussed on the record. [Citations.] Indeed, where no actual conflict has materialized at the time the waiver is taken, it may simply be impossible to foresee future developments that could

17.

have a genuine effect on counsel's loyalty and zeal; on the other hand, sources of conflict that are merely speculative and conjectural need not be addressed." (*People v. Mai*, *supra*, 57 Cal.4th at p. 1011.)

"When in violation of its duty the trial court fails to inquire into the possibility of a conflict of interest or fails to adequately act in response to what its inquiry discovers, it commits error under *Wood v. Georgia* [(1981)] 450 U.S. 261…  [Citation.]  [¶]  To obtain reversal for *Wood* error, the defendant need not demonstrate specific, outcome-determinative prejudice.  [Citation.]  *But he must show that an actual conflict of interest existed and that that conflict adversely affected counsel's performance*." (*People v. Bonin, supra*, 47 Cal.3d at pp. 837–838, italics added.)

### 1.    Analysis

To the extent that the representations by Mr. Chase and/or Mr. Marquez involved impermissible conflicts, appellant was advised of and waived these conflicts.  As to Mr. Chase's prior representation of Mariscal, the court fully stated on the record at the change-of-plea hearing the nature of Mr. Chase's potential conflict, and appellant acknowledged he had already been advised of and understood that potential conflict.  The court repeatedly offered to continue the change of plea hearing and appoint another attorney to represent appellant, and appellant declined.

At that same change of plea hearing, the court stated that Mr. Chase and Mr. Marquez had already talked with their respective clients about having Mr. Marquez represent both appellant and Pedraza simply to enter their pleas, and both clients agreed to the concurrent representation for the plea and sentencing hearings since the negotiated disposition and indicated sentence had already been agreed to.  The court again asked appellant if he consented to Mr. Marquez's representation, and appellant said yes.  The court asked Pedraza if he consented to the joint representation, and he also agreed.

Appellant asserts his waivers were not knowing and intelligent, and he was prejudiced by Mr. Chase's original representation when he negotiated the plea agreement,

and Mr. Marquez's joint representation of appellant and Pedraza at the plea hearing. Appellant's prejudice arguments are based on information contained in the incident reports compiled by the correctional officers about the assault on Mariscal in the prison yard, as summarized above.

Appellant notes that according to the reports, "[w]hen the three assailants were subdued, a further search of the area uncovered two prison-made weapons. One of the two weapons was discarded by defendant Perez according to a prison official. The victim made no statement as to his assailants and/or what part each separately played in the assault. At a minimum, the [incident] reports indicate that the discovery of two weapons means that at least one of the three alleged assailants, including appellant, was not armed at the time, a possible mitigating factor."

Appellant further asserts that Mr. Chase's conflicted representation, and the absence of a knowing and voluntary waiver of that conflict, was prejudicial because codefendant Perez received "received a better resolution" of the charges than appellant and Pedraza, even though Perez was the suspect who threw away the weapon immediately after the assault. Appellant then claims that "[i]f it was established appellant was unarmed, this is certainly a factor that could have resulted in a lesser term." Appellant thus concludes that "it cannot be stated with any certainty that appellant was one of the two who used a weapon during the assault and/or whether any of the two weapons discovered by prison authorities was attributable to him or actually used in the assault."

Appellant further argues the conflict created by Mr. Marquez's dual representation of appellant and Pedraza discouraged any interest Mr. Marquez may have had to object to appellant's negotiated disposition at the plea hearing, even if there was some disparity in appellant's culpability relative to Perez, since the plea offers to appellant and Pedraza were on condition that both pleas remain in full force and effect.

There are several problems with appellant's prejudice arguments. First, his argument is based on the assertion that codefendant Perez "received a better resolution" of the identical charges that were also filed against appellant and Pedraza. In making this argument, appellant cites to a footnote in his opening brief, that "court records" show Perez "received a substantially less sentence" of two years eight months in prison. Appellant did not cite to anywhere in the instant appellate report to support this statement about codefendant Perez's purported sentence. Our review of the record, including the probation report, fails to show any evidence or statements about the disposition of the charges against Perez. Thus, the underlying basis for appellant's supposition about Perez's "better resolution" is unsupported by the evidence and perhaps based upon ex parte information.

Second, the existing record suggests a reason why Perez may have received a lesser sentence, regardless of whether he threw away a weapon after the assault ended. Appellant, Perez, and Pedraza were charged with the same two felony counts and great bodily injury enhancements for their alleged assault on Mariscal. As to both appellant and Pedraza, it was further alleged they each had three prior serious felony conviction enhancements, and three prior strike convictions. The negotiated disposition and indicated sentence for both appellant and Pedraza were identical: a plea to count 2, admission of one prior strike, a second strike term of eight years, and dismissal of the other count and special allegations. By comparison, the complaint alleged Perez only had one prior serious felony enhancement and one prior strike conviction. There is thus an objective reason in the record as to why Perez may have received a negotiated disposition with a lower aggregate term, since he did not already have three prior strike convictions.

Third, appellant asserts the incident reports show the conflicted representations by Mr. Chase and Mr. Perez were prejudicial because there were three suspects but only two weapons, Perez was seen throwing away one weapon, there was a possibility that appellant did not assault Mariscal with a weapon, and Mr. Chase should have negotiated

20.

a more favorable disposition and Mr. Marquez should have objected to the plea agreement with the harsher sentence for appellant. The incident reports undermine this same theory. The correctional officers reported that appellant, Perez, and Pedraza stood over Mariscal and were repeatedly striking his face and upper torso in downward, stabbing-type motions, with what appeared to be inmate-made weapons. Mariscal had multiple severe injuries consistent with being inflicted by weapons, and he required treatment at a hospital. There was a large amount of blood on Mariscal's facial area, upper torso, and back.

While the officers found two weapons, including the item thrown by Perez, the incident reports also documented evidence that showed all three suspects participated in the assault: all three suspects had blood on their clothing; appellant had abrasions, swelling, and dried blood on both hands; and Perez and Pedraza also had abrasions and dried blood on their hands. The incident reports thus undermine an argument that appellant was not involved in the assault upon Mariscal.

Fourth, appellant asserts the conflicted representation was prejudicial and one of his attorneys should have objected to the negotiated disposition because it was reasonable to conclude that appellant did not possess a weapon, which would have been a mitigating factor in any plea agreement. The question of whether appellant used one of the two weapons found at the scene was clearly considered in the plea agreement. Appellant, Perez, and Pedraza were charged with count 1, assault with a deadly weapon, and count 2, assault by means likely to cause great bodily injury, with great bodily injury enhancements. The negotiated disposition was for appellant and Pedraza to only plead to count 2, assault by means likely to cause great bodily injury, and admit one prior strike conviction, with dismissal of all other charges and special allegations. Thus, appellant did not enter into a plea for the felony charge based on his alleged possession or use of a weapon in the assault against Mariscal.

Appellant's prejudice arguments are based on supposition and undermined by the entirety of the record. We thus conclude that to the extent the court failed to fully advise appellant of the nature of any purported conflicts arising from the representations by Mr. Chase and Mr. Marquez, it is not reasonably probable that the result would have been different absent these alleged conflicts. (*People v. Mai*, *supra*, 57 Cal.4th at p. 1010.) We also conclude the court properly denied appellant's motion to withdraw his plea and admission.

## DISPOSITION

The judgment is affirmed.